# Exhibit C



# PHILADELPHIA MUNICIPAL COURT
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
1339 Chestnut Street, 10th Floor, Philadelphia, PA 19107

T. Francis Shields, President Judge   John J. Joyce, Deputy Court Administrator

## STATEMENT OF CLAIM

Code: Return Security - (6)          SC/LT: # SC-25-09-09-3677

| | |
|---|---|
| Courtney Hathaway<br>601 W Cliveden Street Apt. A306<br>Philadelphia, PA 19119 | CPM Management Inc<br>126 W Allens Ln Unit A3<br>Philadelphia, PA 19119<br><br>SBG Managament Services Inc<br>PO Box 549<br>Abington, PA 19001 |
| *Plaintiff(s)* | *Defendant(s)* |

Service Address (information) if other than above:

*To the Defendant: Plaintiff is seeking a money judgment against the **Defendant(s)** based on the following claim:*
In March 2023, the plaintiff entered into a lease agreement with the defendant for the property located at 126 W Allens Lane Apt A6 in Philadelphia. After vacating the premises on March 28, 2025, the plaintiff personally returned the keys to the office and claims that the property was left in good condition. The plaintiff provided a forwarding address for the return of their $1,250 security deposit; however, the defendants have not returned the deposit, each claiming the other is responsible. Consequently, the plaintiff is pursuing double damages under 68 Purdons 250.512, totaling $2,500. Despite attempts to resolve the issue amicably, the plaintiff is now seeking a judgment for $2,500 plus court costs.

### Summons to the Defendant
**You are hereby ordered to appear at a hearing scheduled as follows:**
### Citation al Demandado
**Por la presenta, Usted esta dirljido a presentarse a la siguiente:**

1339 Chestnut Street 6th Floor
Philadelphia, PA 19107
Hearing Room: 2

November 3rd, 2025

09:15 AM

### Amount Claimed

| | | |
|---|---|---|
| Principal | $ | 2500.00 |
| Interest | $ | 0.00 |
| Attorney Fees | $ | 0.00 |
| Other Fees | $ | 0.00 |
| **Subtotal** | $ | 2500.00 |
| Service | $ | 27.00 |
| State Fee | $ | 14.75 |
| Automation Fee | $ | 5.50 |
| Convenience Fee | $ | 0.00 |
| JCS St. Add. Surcharge | $ | 11.25 |
| JCS St. Add. Fee | $ | 2.25 |
| ATJ Fee | $ | 2.00 |
| ATJ Surcharge | $ | 10.00 |
| Court Costs | $ | 49.50 |
| **TOTAL CLAIMED** | $ | 2622.25 |
| Date Filed: 09/09/2025 | | |

I am a plaintiff in this statement of claims action. I hereby verify that I am authorized to make this verification and that the facts set forth above are true and correct to the best of my knowledge, information and belief. I understand that this verification is made subject to the penalties set forth in 18 Pa. C.S. &sect; 4904, which concerns the making of unsworn falsifications to authorities.

**Signature Plaintiff/Attorney**
Atty ID #: _____

**Address &**  601 W Cliveden Street Apt. A306
**Phone**      Philadelphia, PA 19119

NOTICE TO THE DEFENDANT, YOU HAVE BEEN SUED IN COURT.
PLEASE SEE ATTACHED NOTICES

AVISO AL DEMANDADO LE HAN DEMANDADO EN CORTE. VEA POR FAVOR
LOS AVISOS ASOCIADOS.

**If you wish to resolve this matter without appearing in court, please contact the attorney shown above immediately.**



# PHILADELPHIA MUNICIPAL COURT
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
### 1339 Chestnut Street, 10th Floor, Philadelphia, PA 19107
T. Francis Shields, President Judge    John J. Joyce, Deputy Court Administrator

| | # SC-25-09-09-3677 |
|---|---|
| Courtney Hathaway<br>601 W Cliveden Street Apt. A306<br>Philadelphia, PA 19119 | CPM Management Inc<br>126 W Allens Ln Unit A3<br>Philadelphia, PA 19119<br><br>SBG Managament Services Inc<br>PO Box 549<br>Abington, PA 19001 |
| *Plaintiff* | *Defendant(s)* |

## IMPORTANT NOTICE TO ALL PARTIES



THE MUNICIPAL COURT COMPLIES WITH THE AMERICANS WITH DISABILITIES ACT WHICH REQUIRES THAT ALL COURT SERVICES AND FACILITIES BE ACCESSIBLE TO PERSONS WITH DISABILITIES ON AN EQUAL BASIS TO THOSE WITHOUT DISABILITIES. IF YOU HAVE A DISABILITY, AND REQUIRE REASONABLE ACCOMMODATIONS TO FILE A CLAIM, PARTICIPATE IN A MUNICIPAL COURT PROCEEDING, OR USE ANY SERVICE PROVIDED BY THE COURT, PLEASE CALL 215-686-7986. REQUESTS FOR REASONABLE ACCOMMODATIONS MUST BE MADE AT LEAST (3) THREE BUSINESS DAYS BEFORE ANY HEARING, OR WITHIN (3) THREE BUSINESS DAYS AFTER SERVICE (DELIVERY) OF THE NOTICE OF THE HEARING, WHICHEVER IS LATER.

## NOTA IMPORTANTE PARA TODO PERSONAS

LA CORTE MUNICIPAL CUMPLE CON EL DECRETO DE AMERICANO INCAPACITADOS (AMERICANS WITH DISABILITIES ACT). ESTE DECRETO REQUIRE QUE TODOS LOS SERVICIOS Y FACILIDADES DE CORTE SEAN ACCESIBLE. A PERSONAS INCAPACITADAS, AL IGUAL QUE PERSONAS NO INCAPACITADAS. SE USTED ESTE INCAPACITADO Y NECESITA ACOMODACIONES RAZONABLES, PARA PODER RADICAR UNA DEMANDA, PARTICIPAR EN ALGUN PROCEDIMIENTO O UTILIZAR SERVICIOS EN LA CORTE MUNICIPAL POR FAVOR LLAME AL TELEFONE 215-686-7986. PARA SOLICITAR ACOMODACIONES RAZONABLES, DEBE LAMAR POR LO MENOS TRES DIAS DE TRABJO ANTES DE SU AUDIENCIA O DENTRO DE TRES DIAS DESPUES DE RECIBIR SU CITA, SEGUN O QUE OCURRA PRIMERO.

300-12/10/02

### Frequently Asked Questions About Small Claims Court

**What is a Statement of Claim and why have I received one?** You have received a Statement of Claim because you have been sued by someone to whom it is alleged that you owe money. The Statement of Claim sets forth the facts upon which the person who is suing you is relying. You should read the Statement of Claim carefully.

**What is the date, time and location of my trial?** On the left hand side of the Statement of Claim under the heading "Summons to the Defendant," you will find the date, time and location of the trial. All trials are held in a courtroom located on the 6th floor of the Widener Building, 1339 Chestnut Street, Philadelphia, PA 19107. It is important that you appear on time because you risk losing your case if you are late.

**What should I do if I am unable to be present at my trial?** All requests for a continuance must be in writing, should specify the reason for the continuance, and demonstrate that you have notified all parties of your request. If the request is received by the court ten days or more before the trial, you will be notified prior to the trial of whether your continuance request was granted or denied. If the continuance request is received by the court less than ten days before the trial, the judge assigned to the case will make the decision at the time on which the trial is scheduled.

**Do I need a lawyer?** No. The Philadelphia Municipal Court was established for the purpose of providing "an expeditious small claims procedure whereby it shall not be necessary for the litigants to obtain counsel." You may, however, have a lawyer represent you at a trial. If you want a lawyer, you may want to contact the Philadelphia Bar Association's Lawyer Referral and Information Service at 215-238-6333 or visit its site at www.philadelphiabarlawyers.com. Additionally, you may also qualify for a FREE lawyer or may be able to receive FREE advice from SeniorLaw Center (215-988-1244), Community Legal Services (215-981-3700 – Center City Office or 215-227-2400 – North Philadelphia Office), Legal Clinic for the Disabled (215-587-3350), or the AIDS Law Project (215-587-9377).

**Do I need to file any papers before coming to trial?** If there is a Notice of Defense in the packet of papers that you received and you intend to present a defense at trial, you should complete the Notice and mail it at least five days before trial in the pre-addressed envelope that is supposed to be enclosed. If there is no envelope enclosed, you do not need to complete and return the Notice of Defense. If you complete and return the Notice of Defense, you should bring a copy of it to trial with you. If you believe that the Philadelphia Municipal Court is not the proper court in which you should be sued, please call 215-686-2910 as soon as possible and a member of the court's staff will explain to you how to file a letter bringing your position to the court's attention. If you believe that you have a claim against the person who sued you or believe that another person should be a party to the action, please call 215-686-7988 as soon as possible and a member of the court's staff will explain to you how to file a counterclaim, cross claim, or additional claim. The court does not require or accept what you may have heard described as an Answer, New Matter, or Preliminary Objections.

**What should I bring to trial?** You should bring all documents and witnesses that support your defense to trial. Those documents may include letters, cancelled checks, bills of sale, contract, agreements, cancelled checks, photographs (it is preferred that photographs be printed and not on a cell phone), account books, and paid bill receipts.

**What happens if I fail to appear at trial and the case has not been continued?** If you fail to appear at trial and the case has not been continued, you risk losing your case and having what is called a Default Judgment entered against you.

**What do I need to bring to court if the party sued is a corporation, partnership or other similar entity?** You should bring proof that you have authority to speak on behalf of the entity. One example is articles of incorporation showing that you are an office of the corporation. Additionally, the court has an Authorized Representative Form that you may use.

**Who should I call if I have a question that is not addressed above?** Call the court at 215-686-2910, 215-686-7987 or 215-686-7988 or visit the court at 1339 Chestnut Street, 10th floor, Room 1000.



# PHILADELPHIA MUNICIPAL COURT
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

# SC-25-09-09-3677

| | |
|---|---|
| Courtney Hathaway<br>601 W Cliveden Street Apt. A306<br>Philadelphia, PA 19119 | SBG Managament Services Inc<br>PO Box 549<br>Abington, PA 19001 |
| *Plaintiff* | *Defendant(s)* |

## ELECTRONIC CASE ACCESS ACCOUNT REGISTRATION

As per the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts*, you have the ability to register for full, unrestricted access to the case mentioned in the above caption.

To register for access to this case you can visit https://fjdclaims.phila.gov

If you do not currently have an account, you may register for one at the above link. You will be required to provide the following information:

## Case Participant ID: 10964628

## Registration ID: 88ee-317971bc837c

If you already have an account, you may login at the above link and click on the "Manage My Cases" menu item. You will be required to provide the above information along with the case number.



# PHILADELPHIA MUNICIPAL COURT
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
1339 Chestnut Street, 10th Floor, Philadelphia, PA 19107

T. Francis Shields, President Judge    John J. Joyce, Deputy Court Administrator

# SC-25-09-09-3677

| | |
|---|---|
| Courtney Hathaway<br>601 W Cliveden Street Apt. A306<br>Philadelphia, PA 19119 | CPM Management Inc<br>126 W Allens Ln Unit A3<br>Philadelphia, PA 19119<br><br>SBG Managament Services Inc<br>PO Box 549<br>Abington, PA 19001 |
| *Plaintiff* | *Defendant(s)* |

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: Courtney Hathaway

Signature:

Name: Courtney Hathaway

Attorney No. (if applicable): _____

# Notice of Language Rights



1339 Chestnut Street, 10th Floor, Philadelphia, PA 19107
Elizabeth McCarrick  215-683-8000
languageaccesscoordinator@courts.phila.gov

**English:** You have the right to an interpreter at no cost to you. To request an interpreter, please inform court staff using the contact information provided at the top of this notice.

**Spanish/Español:** Usted tiene derecho a un intérprete libre de costo. Para solicitar un intérprete favor de informárselo al personal judicial utilizando la información provista en la parte superior de este aviso.

**Mandarin/Cantonese Simplified Chinese/普通话/粤语简体中文:** 您有权获得免费的口译员服务。若需要口译员，请使用本通知上方提供的联系信息通知法院工作人员。

**Mandarin/Cantonese Traditional Chinese/普通話/廣東話繁體中文:** 您有權要求免費傳譯服務。如欲要求傳譯服務，請參閱本通知頂部的聯絡資料，通知法庭職員。

**Arabic/العربية :** يحق لك الحصول على مترجم دون دفع أي تكلفة من جانبك. لطلب مترجم، يُرجى إعلام موظفي المحكمة باستخدام معلومات الاتصال المقدمة في الجزء العلوي من هذا الإشعار.

**Russian/Русский:** У вас есть право на бесплатные услуги переводчика. Заявка на переводчика подается в суд по адресу, телефону или эл. почте, указанным выше в заголовке этого уведомления.

**Vietnamese/Tiếng Việt:** Quý vị có quyền được một thông dịch viên giúp mà không tốn chi phí nào cả, xin hãy báo cho nhân viên tòa án dùng thông tin liên lạc có ở trên đầu thông báo này.

**Nepali/नेपाली:** तपाईंको निःशुल्क रूपमा भाषा अनुवादक राख्न पाउने अधिकार छ। अनुवादकको लागि अनुरोध गर्न, यस सूचनाको माथि दिइएको सम्पर्क जानकारी भरेर अदालतका कर्मचारीहरूलाई जानकारी दिनुहोस्।

**Korean/한국어:** 귀하는 비용에 대한 부담 없이 통역 서비스를 받을 권리가 있습니다. 통역 서비스를 요청하려면 본 통지서의 상단에 기재된 연락처를 통해 법원 직원에게 알리십시오.

**Polish/Polski:** Ma Pan/Pani prawo do nieodpłatnego skorzystania z usług tłumacza ustnego. Aby zwrócić się o wsparcie ze strony tłumacza ustnego, proszę skontaktować się z pracownikami sądu, korzystając z danych znajdujących się w górnej części niniejszego dokumentu.

**Punjabi/پنجابی /Pakistan:** تہاڈے کول بغیر ادائیگی کیتیاں اک مترجم حاصل کرن دا حق اے۔ مترجم دی درخواست کرن لئی، مہربانی کر کے ایس نوٹس دے أوتے فراہم کیتیاں دیاں معلومات نوں ورتدیاں عدالت دے عملے نوں اطلاع دوو۔

**Punjabi/ਪੰਜਾਬੀ /India:** ਤੁਹਾਨੂੰ ਇਕ ਦੁਭਾਸ਼ੀਆ ਹਾਸਲ ਕਰਨ ਦਾ ਹੱਕ ਹੈ, ਜਿਸ ਦੀ ਤੁਹਾਨੂੰ ਕੋਈ ਲਗਾਤ ਨਹੀਂ ਲੱਗੇਗੀ। ਦੁਭਾਸ਼ੀਏ ਲਈ ਬੇਨਤੀ ਕਰਨ ਵਾਸਤੇ, ਕਿਰਪਾ ਕਰ ਕੇ ਅਦਾਲਤ ਦੇ ਅਮਲੇ ਨੂੰ ਜਾਣੂ ਕਰਵਾਓ ਤੇ ਇਸ ਲਈ ਇਸ ਨੋਟਿਸ ਦੇ ਸਿਖਰ ਉੱਤੇ ਦਿੱਤੀ ਸੰਪਰਕ ਜਾਣਕਾਰੀ ਦਾ ਇਸਤੇਮਾਲ ਕਰੋ।

**Portuguese/Português:** Você tem direito a um intérprete gratuitamente. Para solicitar um intérprete, informe à nossa equipe usando os dados de contato mostrados na parte superior deste aviso.

**Somali/Soomaali:** Waxaad xaq u leedahay in lagu turjumo lacag la'aan ah. Si aad u codsato turjumaanka, fadlan u sheeg maxkamadda shaqaalaha adiga oo isticmaala macluumaadka ciwaanka kor lagu siiyay ee ogeysiiskaan.

**Haitian Creole/Kreyòl Ayisyen:** Ou gen dwa resevwa sèvis yon entèprèt gratis. Pou mande pou yon entèprèt, tanpri fè manm pèsonèl tribinal la konnen lè ou sèvi avèk enfòmasyon an yo te bay ou nan tèt avi sa a.

**French/Français :** Vous avez le droit de bénéficier gratuitement de l'assistance d'un interprète. Pour en faire la demande, veuillez en informer le personnel du tribunal à l'aide des coordonnées indiquées en haut de page.

From: **Courtney Hathaway** chathaway1030@gmail.com
Subject: **Re: Allens - A6 - Security Deposit**
Date: **Apr 1, 2025 at 5:50:07 PM**
To: **Jackie Silverman** jsilverman@sbgmanagement.com

Good evening Jackie,

Thank you for getting back to me.

Yolanda from CMPH Management advised me to contact SBG regarding my security deposit, as they were the initial recipient. She explained that after the management transition, SBG transferred everything except the security deposit to CMPH Management. However, she clarified that CMPH Management is not responsible for my security deposit and that SBG remains the appropriate point of contact for its return.

I am currently waiting for Yolanda's contact information so I can include her in this email for further clarification.

Thank you for your time and assistance.

Best,

Courtney

On Apr 1, 2025, at 3:45 PM, Jackie Silverman
<jsilverman@sbgmanagement.com> wrote:

Hi Courtney,

Thank you for getting in touch.

Unfortunately, we are not able to do anything for you in terms of your move out/security deposit.

We are no longer the property management company for the property.

You will need to speak with Yolanda for whom you've already been in touch with.

Thank you, Jackie

Jackie Silverman
SBG Management Services, Inc.
P.O. Box 549
Abington, PA  19001
Phone:  215-938-6665  ext. 2011
www.SBGManagement.com

Confidentiality Notice: This email is intended only for the use of the Individual or Entity to whom it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you have received this communication in error, please do not distribute; notify the sender by email at the address shown above, then delete the original message with any attachments. Thank you for your compliance.

Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by Mimecast, a leader in email security and cyber resilience. Mimecast integrates email defenses with brand protection, security awareness training, web security, compliance and other essential capabilities. Mimecast helps protect large and small organizations from malicious activity, human error and technology failure; and to lead the movement toward building a more resilient world. To find out more, visit our website.

Courtney Hathaway & Khayr Ransom

126 W Allens Ln. Apt A6

Philadelphia, PA 19119

Chathaway1030@gmail.com & Khayr.ransom@gmail.com

484-868-5396 (CH) & 267- 836-2232 (KR)

2/3/2025


CPM MGMNT, Inc.

126 W Allens Ln. Apt A3

Philadelphia, PA 19119


## Notice of Lease Termination


Dear CPM Management,

We are writing to formally notify you of our intent to terminate our lease at 126 W Allens Ln—apartment A6, Philadelphia, PA 19119. While our lease is set to end on Friday, April 4, 2025, we plan to vacate the property by the end of the day on Monday, March 31, 2025. If there are any changes to this plan, we will notify you in advance.

As we get closer to the move-out date, we would appreciate any instructions regarding the return of the keys and any other necessary steps for the move-out process. Additionally, please provide details on the return of our security deposit at your earliest convenience.

Thank you for your time and assistance. Please confirm once this email is received and a paper copy will be dropped off to the management office tomorrow 2/4/2025. Please let us know if you need any further information.

Sincerely,

Courtney Hathaway & Khayr Ransom, Apartment A6

**RECEIPT** No. 220250

DATE 2/28/25

FROM Courtney Bathany  $ 1300 VL

A-6 ____ DOLLARS

○ FOR RENT
○ FOR

| ACCT. | ○ CASH |
| PAID | ○ CHECK |
| DUE | ○ MONEY ORDER |
| | ○ CREDIT CARD |

FROM ____ TO ____
BY MA

A-1152
T-4161

*Proof of PAID rent*

**RECEIPT** No. 220257

DATE 3/28/25

FROM A-6 Khays Rasom  $

Courtney Bathany ____ DOLLARS

○ FOR RENT
○ FOR Returned Keys

| ACCT. | ○ CASH |
| PAID | ○ CHECK |
| DUE | ○ MONEY ORDER |
| | ○ CREDIT CARD |

FROM ____ TO ____
BY MA

A-1152
T-4161

*Proof of Returned Keys to A6.*

*Proof of certified Mail sent to SBG + CPM.*



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

Philadelphia, PA 19119

Certified Mail Fee $4.85

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy) $
☐ Return Receipt (electronic) $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required $
☐ Adult Signature Restricted Delivery $

Postage $1.00

Total Postage and Fees $9.90

Sent To CPM Management Inc
Street and Apt. No., or PO Box No. 126 W Allens Ln, Unit A3
City, State, ZIP+4® Philadelphia, PA 19119

PS Form 3800, January 2023 PSN 7530-02-000-9047    See Reverse for Instructions

MARKET SQUARE STATION 19118 MAY 23 2025 USPS

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

Abington, PA 19001

Certified Mail Fee $4.85

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy) $
☐ Return Receipt (electronic) $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required $
☐ Adult Signature Restricted Delivery $

Postage $1.00

Total Postage and Fees

Sent To SBG Management Services
Street and Apt. No., or PO Box No. PO Box 549
City, State, ZIP+4® Abington, PA 19001

PS Form 3800, January 2023 PSN 7530-02-000-9047    See Reverse for Instructions

MARKET SQUARE STATION 19 MAY 23 2025 USPS

**Courtney Hathaway**

601 W Cliveden St. Apt A306

Philadelphia, PA 19119

chathaway1030@gmail.com

(484) 868-5396

**May 23, 2025**

**To:**

SBG Management Services Inc.

P.O. Box 549

Abington, PA 19001

**Re: Final Demand for Return of Security Deposit**

Dear SBG Management,

I am writing to make a final, formal demand for the immediate return of my **$1,250.00** security deposit for the apartment I rented at **126 W Allens Lane, Apt A6, Philadelphia, PA 19119**.

I vacated the property and turned in the unit keys on **March 28, 2025**. While my lease formally ended on **March 31, 2025**, I fulfilled all obligations and returned possession of the unit prior to that date. I also provided my forwarding address on March 28, 2025. Attached is documentation confirming that the apartment was left in good condition, as verified during the post-move-out inspection.

On **April 14, 2025**, CPM Management confirmed in writing that the full **$1,250.00** security deposit was due back to me. Despite this acknowledgment, I have not received the

payment. As of today, it has been **fifty-six (56) days** since I vacated the unit—well beyond a reasonable or lawful timeframe.

Your failure to remit the owed funds constitutes a violation of **Pennsylvania state law** as well as a breach of the lease agreement. Per the lease (**Page 3, Section 7**), responsibility for returning the deposit lies with the current landlord or their successor. Furthermore, I am fully aware of the **active case currently being led by the Pennsylvania Attorney General's Office against SBG Management** for various actions taken against previous tenants. Your continued noncompliance in my case only further underscores the concerning pattern of misconduct your company has exhibited.

If I do not receive the full deposit by **Friday, June 6, 2025**—the **10th business day** from the date of this letter—I will initiate **legal action in small claims court to recover double the amount**, as permitted under Pennsylvania law. I will also report your conduct to **Ms. Lauren Onecka** of the Attorney General's office and notify the **Cresheim Village Neighborhood Association** of your noncompliance. Additionally, I am prepared to work with **Community Legal Services** and the **Tenants United Renters Network** to ensure this matter is resolved.

Please send the payment to the address listed above. If you have any questions, you may contact me directly.

This matter is long overdue. I expect full resolution by **June 6, 2025**.

Sincerely,

Courtney Hathaway

Courtney Hathaway

601 W Cliveden St. Apt A306

Philadelphia, PA 19119

chathaway1030@gmail.com

484-868-5396


Date: May 23, 2025


To:

CPM Management Inc.

126 W Allens Ln, Unit A3

Philadelphia, PA 19119


Dear CPM Management,


I am writing to make a final, formal demand for the immediate return of my $1,250.00 security deposit for the apartment I rented at 126 W Allens Lane, Apt A6, Philadelphia, PA 19119.


I vacated the property and turned in the unit keys on March 28, 2025. While my lease formally ended on March 31, 2025, I fulfilled all obligations and returned possession of the unit prior to that date. I also provided my forwarding address on March 28, 2025. Attached is documentation confirming that the apartment was left in good condition, as verified during the post-move-out inspection.


On April 14, 2025, CPM Management confirmed in writing that the full $1,250.00 security deposit was due back to me. Despite this acknowledgment, I have not received the payment. As of today, it has been fifty-six (56) days since I vacated the unit-well beyond a reasonable or lawful timeframe.

Your failure to remit the owed funds constitutes a violation of Pennsylvania state law as well as a breach of the lease agreement. Per the lease (Page 3, Section 7), responsibility for returning the deposit lies with the current landlord or their successor.

If I do not receive the full deposit by Friday, June 6, 2025-the 10th business day from the date of this letter-I will initiate legal action in small claims court to recover double the amount, as permitted under Pennsylvania law. I will also report your conduct to Ms. Lauren Onecka of the Attorney General's office and notify the Cresheim Village neighborhood association of your noncompliance. Additionally, I am prepared to work with Community Legal Services and the Tenants United Renters Network to ensure this matter is resolved.

Please send the payment to the address listed above. If you have any questions, you may contact me directly.

This matter is long overdue. I expect full resolution by June 6, 2025.

Sincerely,

Courtney Hathaway

In addition, the Pennsylvania Human Relations Act and the federal Fair Housing Act prohibit against you for (1) opposing housing discrimination based on a protected category, a complaint, testifying, assisting, or otherwise participating in a proceeding involving

[12] https://www.puc.pa.gov/media/1676/act-201_fs-oct2021.pdf

# Consumer Guide to Tenant and Landlord Rights

a claim of housing discrimination based on a protected category

## V.    ENDING A LEASE

A periodic lease (month-to-month or year-to-year) most often ends in one of three ways

- You move out before the end of the term
- You or the landlord gives notice 15 days before the end of the term that the lease will not renew
- You or the landlord materially breaches the lease

A lease for a fixed period of time most often ends in one of three ways:

- You move out before the end of the term
- The term of the lease expires and the parties do not agree to renew
- You or the landlord materially breaches the lease

### A.    Early Termination

There is no stand-alone right to terminate a lease early, and many lease agreements do not allow a tenant to terminate early. If you voluntarily move out before the end of the lease, the lease does not allow for early termination, and the landlord has not breached any of their obligations, then you will likely be responsible for paying rent until the lease expires or until the landlord rents the unit to a new tenant.

In Pennsylvania, the landlord has no obligation to locate a new tenant to rent the unit. If you move out early, the landlord may be able to make you pay rent for the rest of the lease term

### B.    Security Deposit Refund and Deductions

To have your security deposit refunded, you must provide the landlord with a forwarding address and return the keys to the property. 68 P.S. § 250 512(e). Before leaving, clean the unit as thoroughly as possible and take photos to document its condition.

Within 30 days after you have moved out, the landlord must either return the entire security deposit or send you a list of damages, the cost of repairs, and any money remaining from the security deposit. 68 P.S. § 250 512(a). Permissible deductions include "actual damages" to the rental unit. Id

If the landlord does not provide a written list of damages within 30 days, they may not keep any part of the security deposit. 68 P.S. § 250 512(b). You may then sue to recover double the amount of the deposit minus any actual damages as determined by a court. 68 P.S. § 250 512(c).

If, within 30 days, the landlord fails to pay you the difference between the security deposit and the actual damages to the property, the landlord is liable for double the amount by which the

# Consumer Guide to Tenant and Landlord Rights

security deposit exceeds the actual damages to the property. 68 P.S. § 250 512(b) (c)

If you break the lease, the security deposit may be forfeited. 68 P.S. § 250 512(a)

### C.    Eviction

A landlord may seek to evict you if you fail to pay rent, fail to move out at the end of the lease, or violate a term of the lease. 68 P.S. § 250 501(a)

Landlord "self-help" eviction is prohibited – i e , landlord may not change your locks or shut off your utility service to initiate an eviction. Instead, the landlord must follow the process below

attorneygeneral.gov

## Consumer Guide to Tenant and Landlord Rights

reasonable relation to the cost incurred by the landlord
- The amount of security deposit you must pay
- Which utilities you are responsible for paying and how costs for those utilities are assessed
- How the lease can or will be renewed and whether the lease will renew with a rent increase
     NOTE  Some leases include an automatic renewal provision unless either the landlord or tenant gives notice before a certain date  Make sure to carefully read your lease to determine whether and when it will automatically renew
- Whether you can terminate the lease early, including any penalty you must pay
     NOTE: There is no right to terminate a lease early, and many lease agreements do not allow a tenant to terminate early. See **Early Termination** (Part V.A), below
- Whether the lease waives the legal requirement that the landlord provide you written notice prior to initiating eviction proceedings (sometimes called a Waiver of Notice to Quit provision). See **Notice to Quit** (Part V.C.1), below
- Whether you can sublease the rental unit
- Who to contact for maintenance and repairs and how to contact them
- A complete list of any rules and regulations the landlord expects you to follow
- Whether pets are allowed and any pet security deposit

Do not sign a lease until all blanks are filled in  Make sure you get a copy of the whole lease at signing and keep your copy in a safe place

Lease provisions that violate the law are unenforceable, including provisions that seek to have tenants waive certain rights  E.g., 68 P.S. § 250.504-A  Unenforceable lease terms include provisions requiring the tenants to accept the rental unit "as is," take responsibility for all maintenance and repairs, waive the right to represent themselves in court, or waive their rights to a hearing.

Generally, lease terms cannot be changed until the lease is renewed (such as the amount of rent), unless it is agreed to in writing by the parties

### B.    Security Deposit

A security deposit is money which actually belongs to the tenant, but is held by the landlord for protection against actual damages or unpaid rent.
- During the first year of a lease, the amount of the security deposit cannot exceed two months' rent  68 P.S. § 250.511a(a)
- At the beginning of the second year of a lease, the amount of the security deposit cannot exceed one month's rent. 68 P.S. § 250.511a(b).
- At the beginning of the third year of a lease, the landlord must put any security deposit over $100.00 in an interest bearing bank account, unless the landlord obtains a bond  68 P.S. § 250.511a(c)

## Consumer Guide to Tenant and Landlord Rights

A tenant who occupies a unit or dwelling for two or more years is entitled to interest on their security deposit, beginning with the 25th month of occupancy  68 P.S. § 250.511a(c)  The landlord must give you the interest earned by the account (minus a one percent fee which the landlord may retain for their costs) at the end of the third and each subsequent year of tenancy  Id. The landlord must notify the tenants in writing of the name and address of the banking institution where the security deposit is held  68 P.S. § 250.511b(a)

### C.    Maintenance

Under Pennsylvania law, every lease comes with an **Implied Warranty of Habitability**[10] That means the landlord must maintain the rental unit in a fit and habitable condition. The landlord has a legal duty to fix serious defects affecting your safety or ability to live in the rental unit This duty **cannot be waived** by any lease provision

Examples of uninhabitable conditions include:
- Lack of utility services (heat in the winter, hot and cold running water, and sanitation)
- Rodent infestation
- Leaking roof
- Unsafe floors or stairs
- Broken locks on doors and windows

If a defect exists that impacts your ability to live in the unit, you must notify the landlord and give the landlord a reasonable opportunity to correct the problem  If the landlord fails to remedy the defect, you may have remedies under the law  **You should get legal advice about**

**CPM MGMT., INC**
**126 W. Allens Lane, Unit A3**
**Philadelphia, PA 19119**

Date:  April 14, 2025

Dear Ms. Hathaway

      Re:  Security Deposit Refund
          Property: Allens Lane - Unit A6

Please be advised that any payments made to **SBG Management Services, LLC** in regard to security deposits are still being held by SBG Management Services as outlined in your lease.  SBG Management Services has maintained all security deposits during this transition and any reimbursements shall be made by them.

Attached is your security deposit disposition and your calculated reimbursement.

You can reach SBG Management at:

      Address:      SBG Management Services, Inc
                  PO Box 549
                  Abington, PA 19001

      Email:        PPulley@sbgmanagement.com

      Phone #      (215) 938-6665

A copy of this letter and the security deposit disposition attached is also being sent to SBG Management Services so they are aware of your move and the amount of funds they are to disburse to you.

Sincerely,

CPM MGMT., Inc
info@cpmphl.com
(267) 297-7882

Allens Lane

**Allens Lane**
126 West Allens Lane
Philadelphia, PA 19119

| | |
|---|---|
| Statement Date: | Apr 12, 2025 |
| **Refund Amount:** | **$1,250.00** |

**Courtney Lyn-Terez Hathaway**
601 W CLIVEDEN ST
PHILADELPHIA, PA 19119-3652

| | |
|---|---|
| **Lease:** | 229234 |
| **Unit:** | A6 |
| **Move In Date:** | 03/31/2023 |
| **Lease Start Date:** | 04/05/2024 |
| **Lease End Date:** | 04/04/2025 |
| **Notice Given Date:** | 02/03/2025 |
| **Move Out Date:** | 03/31/2025 |

## Lease Holders

| Name | Occupant Type |
|---|---|
| Courtney Hathaway | Primary |
| Khayr Ransom | Roommate (Responsible) |

## Outstanding Charges

| Date | Description | Notes | Amount | Taxes | Total Amount |
|---|---|---|---|---|---|
| | | | | | |

| | |
|---|---|
| **Total Unpaid Charges:** | **$0.00** |

## Repayment Agreements

| ID | Start Date | End Date | Payments Due | Payment Amount | Due Now | Balance |
|---|---|---|---|---|---|---|
| | | | | | | |

| | |
|---|---|
| **Total Repayment Agreement Balance:** | **$0.00** |

## Deposits

| Date | Description | Amount |
|---|---|---|
| 03/31/2023 | Security Deposit | $1,250.00 |

| Date | Description | | Amount |
|------|-------------|---|--------|
| | | | |

|  | Total Deposits Held: | $1,250.00 |
|--|----------------------|-----------|

## Unapplied Payments / Credits

| Date | Description | Notes | Amount | Taxes | Total Amount |
|------|-------------|-------|--------|-------|--------------|
| | | | | | |

|  | Total Unapplied Payments / Credits: | $0.00 |
|--|-------------------------------------|-------|

|  | Refund Amount: | $1,250.00 |
|--|----------------|-----------|
|  | Courtney Hathaway | $1,250.00 |

**Re: Security Deposit**

SBG Management Services, Inc (landlord name)

PO BOX 549 Abington, PA 1900(landlord address1)

_____ (landlord address2)

_____ (today's date)

Dear SBG Management Services, Inc (landlord name),

I vacated the property at 126 W. Allens Ln. Apt A6 Philadelphia, PA 19119 (address) on

Friday March 28, 2025 (date you moved out).

My security deposit was $ 1,250 (security deposit amount).

I am requesting that you: (check all that apply)
    ☑ Return my security deposit to me in a **check or money order**.

    ☐ Apply my security deposit as a **credit towards a court judgment**.

                LT-_____

Pennsylvania law requires that you respond to this request within 30 days. Thank you for
your attention to this matter.

Sincerely,

_____ (your signature)      Courtney Hathaway (your name printed)

                                601 W. Cliveden St. Apt A306 (your mailing address1)
                                Philadelphia, PA 19119
                                _____ (your mailing address2)

                                484-868-5356 (your phone)

Send one copy by Certified Mail/Return Receipt Requested. Send one copy by Regular Mail. Keep one copy for your records.

WELCOME! We are pleased that you have chosen Allens Lane as your new home. We want to make your move as easy as possible so we have compiled the following information to make your transition a smooth one.

You are scheduled to move in to your new home on 03/31/2023 at .  If you are unable to keep this appointment, please call the leasing office at 267-518-5455 to reschedule.

Your new address is:126 W. Allens Lane Unit # A6 Philadelphia, PA 19119.

Below you will find a checklist of items that need to be completed prior to move-in. Please note all required items must be completed including providing account numbers as indicated.

Please prepare to transfer accounts ahead of time if moving in on the weekends as we will require account numbers as indicated below in order to give you keys to the apartment.

Please contact your insurance provider in order to obtain your renter's insurance liability.  A copy of your Renter's Insurance Declaration, Certificate of Insurance, or Binder must be provided at move –in along with a paid in full receipt. All pets must be specifically referenced on the proof of insurance.  Please note: Declaration must list SBG Management Services, Tenant as an Additional Interest and shall provide that the insurance indicated therein shall not be cancelled without at least a ten (10) days written notice to the Landlord.

Required unless otherwise stated:
PECO 800-494-4000 Account #
PGW 215-235-1000 Account #
Renter's Insurance Declaration, Certificate of Insurance or Binder Policy #
Copy of Vehicle Registration
Pet Owner, rabies vaccination documentation
Comcast-Xfinity – 1-800-COMCAST

The following is a summary of your move in costs/payments: All checks shall be payable to:Allens Lane Apartments. Your monthly rent will be $$1,250.00 plus Parking $0

Prorated Pet Fee $0 (If Applicable)
Prorated Parking Fee $0 (If Applicable)

Security Deposit: $1,250

Total Owed: $2,500

Please be advised that total rent is due again on 05/01/2023 in the amount of $$1,250.00.

Chris Printup, the property coordinator will assist you with the move in process.  Their Number is 267-518-5455.

 DO NOT park in the lot until you are given a parking sticker.

*Courtney L Hathaway*          *Lawrence A Hathaway*          *Geoff Beauparlant*

# Welcome Letter

## Signature Details

| | Signer | IP Address | Date Signed |
|---|---|---|---|
| **1** | **Courtney L Hathaway**<br>Primary (15050420) | 2601:46:c703:4750:7501: | 03/27/2023 11:48:13 AM |
| **2** | **Lawrence A Hathaway**<br>Guarantor (15051755) | 2601:46:c703:4750:b867: | 03/27/2023 07:07:06 PM |
| **3** | **Geoff Beauparlant**<br>Owner/Manager | 162.211.205.15 | 03/29/2023 10:16:46 AM |

APARTMENT, #__A6__

## APARTMENT LEASE

**Notice to Tenant: This Lease contains waivers of consumer rights. If you do not meet your Lease obligations, you may lose your security deposit. You may also be evicted and sued for money damages. By signing this Lease, you are waiving certain important rights. Please read it slowly and carefully and ask about anything you do not understand.**

The Landlord and Tenant agree to lease the apartment on the following terms:

**LANDLORD:** _Allens Lane Realty Co. LP_____

**TENANT:**  _Courtney L Hathaway
**Apartment:**_ A6 **Address**:  _126 W. Allens Lane Unit # A6 Philadelphia, PA 19119_____
**Security Deposit:** $1,250          **Security Fee: $**
**Lease Date:**03/31/2023 **Term:**12       **#Bedrooms:**1
**Number of Occupants (Adults):**1
**Beginning** 03/31/2023 **Monthly rent $**$1,250.00 **No.of Occupants (Minors):**0
**Ending** 03/30/2024 **Yearly rent $** $15,041.00 **Monthly Utility Payment $**
**Utilities and services paid by Landlord:** water ☑   sewer ☑

| | | | | | |
|---|---|---|---|---|---|
| **APPLICATION FEE** | $100 | **PAID** | $0 | **DUE** | |
| **KEY CHARGE** | $ | **PAID** | $ | **DUE** | |
| **FIRST MONTH'S RENT** | $0 | **PAID** | $1,250 | **DUE** | |
| **SECURITY DEPOSIT or FEE**$1,250 | | **PAID** | $0 | **DUE** | |
| **BALANCE DUE ON OR BEFORE POSSESSION:** $ -$1,250.00 | | | | | |

Attached are  pages including this page, which is a part of this Lease.

1.    **Use.**   The Apartment must be used and occupied only as a private residence of the Tenant.  No adults other than persons signing this lease may occupy said premises without written consent of the Landlord. All minors under the age of 18 who will occupy the Apartment are:
    Name:                                    SSN:
 Violation of this term shall constitute a breach of the lease agreement. Subletting is not permitted. Violation of this term shall be considered trespassing.

The Apartment and Complex are being rented **"as is"** and has been accepted by Tenants in its current condition.  By execution of the lease, there are no other changes, modifications or items that are outstanding.  This Complex may not comply with the American with Disabilities Act as it relates to accessibility.  By execution of this lease, you acknowledge that the owner has no obligation, liability, responsibility to make any modifications or changes to the Complex or the Apartment as it relates to compliance with the Americans with Disabilities Act.

If you have another child, adopt a child or foster a child, it is your responsibility to immediately notify the Landlord of this change under your Lease.

Should your marital status change, it is your responsibility to immediately notify the Landlord of this change.  In the event of divorce, separation or other claim by spouse or roommate, Landlord will require both parties' authorization to remove the other person from the Lease or release security deposit(s).  In the event of dispute, Landlord reserves the right to hold security deposit awaiting copy of court order.

Tenants may have no overnight guests for more than two days per month.

Apartment may not be used for babysitting or daycare of minor not on the Lease.

Tenant may not have any roommates unless they are on the Lease.

2.    **Failure to give possession.**        Landlord shall not be liable if it cannot give Tenant possession on the beginning date of the Term.  Rent starts at the beginning of the Term unless Landlord cannot give possession (rent shall then be payable when possession is available).  Landlord must give possession within seven (7) days after the date on the application, or else Tenant may cancel and obtain a refund of

Page | 1

Date: _____   Initials: _____

money deposited. Application Credit Reporting Fees and monies are not refunded under any circumstances. Landlord will notify Tenant when possession is available. The ending date of the Term will not change.

3.    **Rent, added rent, late payment charge.**

A. The rent for each month must be paid to and received by Landlord, on or before the first (1st) day of each month, at the Landlord's address. Landlord need not give notice to pay the rent. Rent must be paid in full without deduction. The first month's rent (and any partial or additional month's rent) will and Security Deposit be paid when Tenant signs this Lease. Tenant may be required to pay other charges or deposits to Landlord under the terms of this Lease. Whether or not stated as such, those other charges are considered "added rent". Added rent will be billed and is payable as rent, together with the next monthly rent due. If Tenant fails to pay the added rent on time, Landlord shall have the same rights against Tenant as if Tenant failed to pay rent. Partial payment of rent, added rent or other charges does not waive Tenants responsibility for full payment, late fees and interest.

B.   Monthly rent will be considered past due if it is not received on or before the close of business on the first (1st) day of the month in which it is due. If the Tenant fails to make payment by midnight of the fifth (5th) day of the month, the Landlord, without notice to the Tenant, may commence any legal action available to Landlord to obtain a money judgment against Tenant and/or regain possession of the Apartment and evict the Tenant for the default. Until the Landlord commences such a legal action for default, Tenant shall be liable for a late fees and interest at a rate of eighteen (18) percent per month for each payment that is late.

C. If Tenant makes partial payment, it is still subject to late fees and interest.

D. Cash will not be accepted.

E.  If your rent is late or your check or money order bounces three times within a twelve-month period, the Landlord reserves the right to not only charge you with additional fees, but may also seek to evict you from the Apartment. Tenant may become subject to added cost or deduction from security deposit as denoted herein.

F.   The late payment fee shall be 10% of the rent or added rent.

4.    **Term.** The Term will end on the date stated above. Sixty (60) days Written notice from Tenant is required to end the Term. Landlord has no obligation to renew tenant's Lease. If Tenant does not receive Notice for Landlord extending Lease, then Tenant shall be considered a year to year Tenant

5.    **Notices.** A. Any bill, statement, approval, consent, permission or notice must be in writing. If to Tenant, it must be delivered, posted on door or mailed to the Tenant at the Apartment. If to Landlord, it must be mailed or delivered to Landlord's address. It will be considered delivered on the day mailed provided, it was given by (i) certified or registered mail, return receipt requested. Each party must accept and claim the notice given by the other. Landlord will notify Tenant if Landlord's address changes.

B.    All notices required to be given by Landlord to Tenant shall be sufficiently given by leaving same upon the desired premises or mailed to Tenant.

C.    Notices to the Landlord must be given by certified or registered mail, return receipt requested, and addressed to Landlord. The only admissible evidence that notice has been given by Tenant shall be Return Receipt signed by Landlord, or, his agent. Landlord Notices, Address: P.O. Box 549, Abington, PA 19001.

Handwritten or typed letters, memos, correspondence in English are the only acceptable forms of notice.

6.    **Utilities and Services.** A. Tenants will arrange and pay for all utilities and services, except the utilities to be paid by Landlord as stated above. Landlord has no obligation to provide (or liability for not providing) the utilities Landlord pays for or provides. Damage or theft to the equipment or appliances supplied by Landlord, caused by Tenant's, their guests, invitees or guests act or neglect, may be repaired or replaced by Landlord at Tenant's expense. The repair or replacement costs will be added rent.

Page | 2

Date: _____    Initials: _____

B.      Tenant may not use the dishwasher, washing machine, dryer, freezer, heater, ventilator, air conditioner equipment or other appliance unless installed by Landlord or with Landlord's written consent.

C.      At the sole discretion of the Landlord, the Landlord may stop service, temporarily or permanently, of any utility including, but not limited to: plumbing, heating, elevator, air conditioner, electrical or other systems because of accident, emergency, repairs or changes, until the work is complete.

D.      Landlord reserves the right to sub meter and bill Tenant for any utilities provided.  Tenant will be billed for their consumption of said service.  The cost for the utilities shall be invoiced as so desired by Landlord and are due within 30 days of the date of invoice.  Utility charges are considered added rent. If not paid within 60 days, Tenant hereby authorizes Landlord to enter the Lease Premises and terminate service.

E.      The Landlord, at its sole discretion, reserves the right to issue exclusive contracts or license agreement to suppliers for cable, electric, television, telephone, gas, and data.  As a result, this may cause a disruption in the Tenant's services.  Should Landlord issue an exclusive contract, then Tenant agrees not to use any other suppliers.  The Landlord owns all supply sources into the complex and they are under his exclusive control.

F.      Tenant is responsible for any overloading of electrical circuits.  The Landlord makes no representations or warranties as to the ability of the electric service to handle any appliances or equipment. Tenant must not use more electric than the apartment or the building can safely carry.

G.      Any required telephone or cable repairs will be performed at the expense of the Tenant.

H.      In the event that any of Landlord's utility costs increase more than 10% in any given year, the Landlord reserves the right to increase Tenant's rent to cover the increased operating costs of the complex.  The Landlord shall absorb the first 10% of any such increase and the Tenants shall absorb the remaining 90% of the increase, divided by the number of units in the complex.  This shall be considered additional rent.

7.      **Security Deposit.**  Tenant gave security to Landlord in the amount stated above.

 If Tenant fails to timely perform any term in this Lease (such as paying rent on time), Landlord may use the security.  If the Landlord uses the security, Tenant shall (upon notice from Landlord) restore the security.  The amount is due, when billed, as added rent, At all times Landlord shall have the amount of security stated above.

If Tenant (i) fully performs all terms of this Lease, (ii) pays rent and added rent on time, and (iii) leaves the Apartment in good condition on the last day of the term, then Landlord will return the security being held within thirty (30) days of vacating.  The check will be addressed jointly to all persons whose names appear on the Lease as Tenants.  Tenant may not apply security to pay rent or added rent.

If Landlord sells or leases the building, Landlord may give the security to the new buyer or lessee.  In that case, Tenant will look only to the new buyer or lessee to return the security, and Landlord will be deemed released from all liability and obligations.  Landlord may purchase security anywhere permitted by law.

Tenant's security will earn interest only when and as required by law, otherwise security will not earn interest. Interest on the security deposit will begin to accrue to Tenants benefit on the third anniversary of Tenant's occupancy provided Tenant is not in default of any other provisions contained herewith. The applicable interest rate should be that amount of interest paid on a passbook saving account at Commonwealth Bank.

Upon Tenant's vacating the Apartment, the Landlord shall inspect the apartment and deductions shall be made from the Tenant's security deposit. Tenant agrees to pay damages in excess of deposit amount within ten (10) days of written notification.

8.      **Alterations.**  Tenant must obtain Landlord's prior written consent to install any paneling, flooring, "built in" decorations, partitions, railings, or to make alterations or to paint or wallpaper the Apartment. Tenant must not change or impair the plumbing, ventilating, air conditioning, electric, heating or other systems.  If consent is given, the alterations and installations will become the property of Landlord when completed and paid for.  They will remain as part of the Apartment at the end of the Term.  If Landlord

Page | 3

Date: _____  Initials: _____

wants them removed, Landlord will give Tenant at least fifteen (15) days notice before the end of the Term.  Tenant will comply with the demand at Tenant's own cost.  Landlord is not required to do or pay for any work unless stated in this Lease.

If a lien is filed on the Apartment or Building for any reason relating to Tenant, Tenant must immediately pay or bond the amount of lien within twenty (20) days.  If not, Landlord may pay or bond the lien or take other action, as Landlord deems necessary at Tenants cost.  Landlord's cost shall be added rent.

9.     **Repairs.**  Tenant must take good care of the Apartment and all equipment, appliances, property and fixtures in it.  Landlord will repair the premises with reasonable promptness, unless caused by Tenant's act or neglect.  In that case, Tenant must, at Tenant's cost, make all repairs and replacements. If Tenant fails to make a needed repair or replacement, Landlord may do so at Tenants cost.  Landlord's cost will be added rent.

Charges for breakage and damage to property are pursuant to attached list which may be revised from time to time.

NOTE:  For items not listed above the actual cost will be assessed **plus** 25%.  Prices are subject to change without notice as prevailing costs change.  Any items broken or damage during the term or move out of the Lease shall be considered added rent.

Upon Tenant's vacating the Apartment, the Landlord shall inspect the apartment and deductions shall be made from the Tenant's security deposit, in accordance with the above price list. Tenant agrees to pay damages in excess of deposit amount within ten (10) days of written notification.

10.     **Fire, accident, defects, damage.**  Tenant must give Landlord immediate notice of fire, accident, damage, or dangerous or defective condition.  If the Apartment cannot be used because of fire or other casualty, Tenant is not required to pay rent for the time the Apartment is unusable (as long as not caused by Tenant).  If part of the Apartment cannot be used, Tenant must pay rent for the usable part.  Landlord shall have the right to decide which part of the Apartment is usable.

If the Apartment or Building is damaged by fire or other casualty, Landlord may cancel the Lease.  If Landlord decides to cancel, Landlord will notify Tenant within thirty (30) days of the fire or casualty.  If not, Landlord shall have a reasonable time to repair.  In determining what is a reasonable time, consideration shall be given to delays such as settling insurance claims, weather, public authorities, Tenant's act or neglect. Obtaining estimates, labor or supply problems, or any other cause not fully within Landlord's reasonable control.  If the fire or other casualty is caused by an act or neglect of Tenant (or Tenant's family, employee, guest or invitee), then all repairs will be made at Tenant's expense.  However, Tenant must still pay the full rent with no adjustment.  The cost of the repairs will be added rent.

**Under no circumstance shall Landlord ever be liable for any loss, theft, criminal action, repair, replacement, expense or damage to any person, property, fixtures, furnishings, personal property or decorations.**

If canceled, the Lease will end thirty (30) days after Landlord's cancellation notice to Tenant.  Tenant must deliver the Apartment to Landlord on or before the cancellation date in the notice, and pay all rent due through the date of fire or casualty.  The cancellation does not release Tenant of liability in connection with the fire or casualty or rent or added rent before the date of event.

11.     **Liability. Under no circumstance shall Landlord ever be liable for any loss, theft, criminal action, repair, replacement, expense or damage to any person, property, fixtures, furnishings, personal property or decorations. In addition the Landlord is not responsible for any damage or injury caused by any other tenant, guest visitor, person, employee or invitee in the apartment, building or upon the complex.**

      A.     Landlord is not liable to Tenant for permitting or refusing entry of anyone into the Building.

      B.     Landlord is not liable for damage or loss of personal property stored in any lockers.  Any locker areas are not represented, as secure and only non-valuable objects should be kept in these storage facilities and any other storage facilities.

Date: _____  Initials: _____

C.    Tenant must pay for damages suffered and expenses of Landlord relating to any claim arising from any act or neglect of Tenant. If an action is brought against Landlord because of Tenant's act or neglect, Tenant will defend Landlord at Tenant's expense, with an attorney of Landlord's choice.

D.    Tenant is responsible for all acts or neglect of Tenant's family, employees, guests or invitees.

E.    Tenant, Tenant's family, employees, guests or invitees are responsible for their conduct and the conduct of any animals they own. Tenant agrees to defend Landlord at Tenant's expense with an attorney of Landlord's choice should a suit be brought against Landlord for the conduct of an animal as stated above.

F.    Landlord reserves its right to report to any governmental agencies, authorities, or social services office any conduct of Tenant, their guest, Tenant's family, employees, or invitees, which in the sole discretion of Landlord represents a threat to the Landlord, management staff or other Tenants.

G.    Landlord reserves the right to contact the police and notify them of any criminal activity or suspicious behavior that in the sole discretion of Landlord, warrants police or other governmental agency action.

12.    **Entry by Landlord, signs.** Landlord may enter the Apartment at reasonable hours to: repair, inspect, exterminate, install, maintain, replace or perform other work that Landlord decides is necessary or desirable.

Management and management representative and servicemen may enter the Apartment at all reasonable times for any reasonable purpose. At reasonable hours Landlord may show the Apartment to possible buyers, lenders or lessees (of the entire Building or land, or for the Apartment). Landlord will try to give reasonable notice, except in emergency. Landlord may place "for sale" or "for rent" signs on the Apartment or Building.

Landlord is not required to provide Tenant with notice, but Landlord will try when circumstances permit.

In the event of emergency Landlord or its agents may enter upon the premises without notice to Tenant to perform those repairs and work as required or deemed necessary in the sole discretion of Landlord.

If the Landlord does not have keys to your apartment, the Landlord will request that you provide keys. If you do not supply keys to the Landlord within five (5) days of any request, this may be considered a breach of this agreement. Please consult Section 26.2 for additional regulations. Landlord reserves the right to not perform services in any unit whose Tenant has not provided keys.

13.    **Assignment and sublease.** Tenant may not assign or transfer all or part of this Lease, or sublet all or part of the Apartment, or permit any other person to use the Apartment without written consent of Landlord.

14.    **Subordination and Attornment.** This Lease and Tenant's rights are subject and subordinate (inferior) to all present and future: (a) leases for the Building or the land on which it stands, (b) mortgages on the leases or the Building of land, (c) agreements securing money paid or to be paid to a lender, and (d) terms, conditions renewals, changes of any kind and extensions of the mortgages, leases or lender agreements. For example, if the Building or land is sold in a court proceeding known as "foreclosure", the new owner may cancel this Lease before the Term ends. Tenant must promptly execute any certificate(s) that Landlord requests to show that this Lease is so subject and subordinate. Tenant authorizes Landlord to sign these certificate(s) for Tenant. A new owner may want Tenant to remain as a tenant under the Lease. If the new owner requests, Tenant will sign as agreement recognizing that. This is known as "Attornment".

15.    **Condemnation.** "Condemnation" means that a legal authority can take the Apartment, Building or land by paying Landlord. If all of the Apartment, Building and land are taken, the Term and Tenant's rights shall end when the authority takes title. If any part of the Apartment, Building or land is taken, Landlord may cancel this Lease on notice to Tenant. The cancellation date will be at least thirty (30) days after notice. If the Lease is canceled, Tenant must deliver the Apartment to Landlord on the cancellation date, together with all rent due to that date. The entire payment for any taking belongs to Landlord. Tenant

Page | 5

Date: _____    Initials: _____

*CLH    *LAH*

assigns to Landlord any interest Tenant may have to any part of the payment. Tenant shall not make a claim for the value of the remaining Term, or for Tenant's interest in the Lease.

16.    **Construction or demolition.**    Construction or demolition may be performed in or near the Building. This shall not affect Tenant's obligations in this Lease, even if it interferes with Tenant's use or enjoyment of the Apartment.

17.    **Tearing down the building.** If the Landlord wants to tear down the entire Building, Landlord shall have the right to end this Lease by giving six (6) months' notice to Tenant.

18.    **No liability for Tenant's property.** Landlord is not responsible for any reason (a) loss, theft or damage to the Tenant's property, or (b) injury caused by the Tenant's property or its use. Landlord does not carry insurance for Tenant's personal property. Tenant is hereby advised that they should obtain renters insurance at Tenants expense.

If Tenant moves out and fails to remove any of Tenant's personal property, than the personal property shall be deemed abandoned after 24 hours.

19.    **Sidewalks, steps, terraces, courtyard and balconies.** The complex may have sidewalks, steps, terrace, courtyard or balcony. The terms of this Lease apply to the sidewalks, steps, terrace, courtyard and balcony, and they are considered part of the common areas and not the Apartment. The Landlord may make special rules for the sidewalks, steps, terrace, courtyard and balcony. Landlord will notify Tenant of such rules.

Tenant must keep the sidewalks, steps, terrace, courtyard and balcony clean and free from snow, ice, leaves, garbage and any other items or obstructions. Tenant must keep all screens and drains in good repair. No cooking is allowed on the sidewalks, steps, terrace, courtyard or balcony.

Tenant may not keep plants; install a fence or any addition or obstruction, to the sidewalks, steps, terrace, courtyard or balcony. If Tenant does, Landlord has the right to remove, dispose and/or store items at Tenant's expense which shall be considered added rent. Tenant shall maintain the sidewalks, steps, terrace, courtyard and balcony in good repair.

20.    **Tenants certificate.** Upon request by Landlord, Tenant shall sign a certificate confirming the following: (1) this Lease is in full force and unchanged (or if changed, how it was changed); (2) Landlord has fully performed all of the terms of this Lease and Tenant has no claim against Landlord; (3) Tenant is fully performing all the terms of this Lease and will continue to do so; (4) rent and added rent have been paid to date; and (5) any other reasonable statement required by Landlord. The certificate will be addressed to the party Landlord chooses.

21.    **Correcting Tenant's defaults.** If Tenant fails to timely correct a default, Landlord may correct it as Tenant's expense. Landlord's costs to correct the default shall be added rent.

22.    **Tenant's duty to obey laws and regulations.** Tenant, guest, invitees, or employees must, at Tenant's expense, promptly comply with all laws, orders, rules, requests and directions of all governmental authorities, Landlord's insurers, Board of Fire Underwriters, or similar groups. Tenant will promptly deliver to Landlord notices from any authority or group. Tenant will not do anything to increase Landlord's insurance premiums. If Tenant does, Tenant must pay the increase in premium as added rent.

23.    **Tenant's default.** The following are not the only rights and remedies. They are in addition to those provided or permitted by law.

A.    Tenant's Waiver of Notices. Landlord shall not be required to give Tenant a notice of default, or any opportunity to correct any default. Tenant also waives the right to receive a "notice of quit" or "note to vacate" from Landlord. This means Landlord is not required to notify Tenant to remove from (leave) the Apartment. Landlord may give Tenant a termination notice (but Landlord is not obligated to give that notice). If given, the termination notice will state the date the Term will end. Tenant must leave the Apartment and give Landlord the keys on or before the termination date. Tenant continues to be responsible as stated in this Lease.

B.    If Tenant's application for the Apartment contains any misstatement of fact that is a default.

Page | 6

Date: _____  Initials: _____

C.    If (1) the Lease is terminated, or (2) rent or added rent is not paid on time; or (3) Tenant vacates the Apartment; or (4) the Term has ended; or (5) Tenant has defaulted in any obligation under this Lease, Landlord may, in addition to other rights and remedies, take any of the following steps:  (a) peacefully enter the Apartment and remove Tenant and any person or property, (b) eviction or other lawful method to take back the Apartment; and (c) sue for money damages.

D.    If this Lease is terminated, or Landlord takes back the Apartment, the following shall take place:

1.    Rent and added rent for the un-expired Term becomes due and payable at once.

2.    Landlord may relet the Apartment and anything in it.  The reletting may be for any term. Landlord may charge any rent (or no rent) and give allowances to the new Tenant.  Landlord may, at Tenant's expense, do any work Landlord reasonably feels needed to put the Apartment in good repair and to prepare it for renting.  Tenant remains liable and is not released except as provided by law.

3.    Any rent received by Landlord for the re-renting shall be used first to pay Landlord's expenses and last to pay any amounts Tenant owes under this Lease.  Landlord's expenses include the cost of getting possession and re-renting the Apartment, including, but not only, reasonable legal fees, brokers fees, cleaning and repairing costs, decorating costs and advertising costs.

4.    From time to time Landlord may bring actions for damages.  Delay or failure to bring an action shall not be a waiver of Landlord's rights.  Tenant is not entitled to any excess of rents collected over the rent paid by Tenant to Landlord under this Lease.

5.    Money received by Landlord from the next tenant (other than the monthly rent) shall not be considered as part of the rent paid to Landlord.  Landlord is entitled to all of it.  If Landlord relets the Apartment, the fact that all or part of the next tenant's rent is not collected does not affect Tenant's liability.  Landlord has no duty to collect the next tenant's rent.   Tenant must continue to pay rent, damages, losses and expenses, without offset.

6.    Tenant will pay Landlord all reasonable costs and expenses Landlord incurs to enforce this Lease.  This includes reasonable attorney's fees, court costs and Administrative fees and expenses.

7.    If Tenant changes employers and fails to notify Landlord of said change this is a default. If Tenant becomes unemployed than Tenant must immediately notify Landlord.

8.    Tenant or Tenants insurance Company will be liable for all costs resulting from negligence or failure on behalf of Tenant to report problems with equipment, apartment, complex or facilities to Landlord.

24.  **No waiver, illegality.**  Landlord's acceptance of rent or failure to enforce any term in this Lease is not a waiver of any of Landlord's rights.  If a term in this Lease is illegal or unenforceable, the rest of this Lease remains in full force.

25.  **Insolvency.**  If (1) Tenant assigns property for the benefit of creditors, or (2) a non-bankruptcy trustee or receiver of Tenant or Tenant's property is appointed, Landlord may give Tenant thirty (30) days notice of termination of this Lease.  If any of the above is not fully dismissed within the thirty (30) days, the Term shall end as of the date stated in the notice.  Tenant must continue to pay rent, damages, losses and expenses, without offset.

26.  **Rules and Regulations.**  Tenant agrees to observe and abide by the following Rules and Regulations and SBG Management Policy/Resident Handbook, but not limited too for safety and care of the buildings and the comfort of all tenants in the complex. Notice of new Rules will be given to Tenant. Landlord need not enforce Rules against other tenants.  Landlord is not liable to Tenant if another tenant(s) violates these Rules.  Tenant receives no rights under these Rules. The Landlord may make further Rules and Regulations for the safety and proper care of the buildings, as well as the comfort of the Tenants. The Tenant agrees to abide by them.  If Tenant, their guests, invitees or employees fails to

Date: _____  Initials: _____

comply with any of the rules in the in the sole discretion of the Landlord, Landlord reserves the right to terminate the lease for an unreasonable conduct in accordance with Section 42.

26.1. **Noise** -The comfort or rights of other Tenants must not be interfered with. This means that annoying sounds, smells and lights are not allowed. For example, the Tenant shall not play any musical instrument, radio or television on the leased premises before 8:00 a.m. or after 7:00 p.m. The Tenant shall keep the volume of any radio, television or musical instrument sufficiently reduced at all times so as not to disturb other tenants in the building. Tenants may not conduct vocal or instrumental practice or instruction on the premises.

26.1.0 **Cleanliness/ Trash/ Housekeeping** - Landlord has instituted a proactive termite control program utilizing safe chemicals. Prior to your occupancy, the unit did not contain any roaches, termites, mice, lice, bedbugs, rats, or fleas. Any infestation of the above within 90 days of your occupancy shall not be the responsibility of Landlord. Please properly insure that when moving your furniture, carpets, and belongings, that they are not infested.

If there should become a lice or bedbug infestation, the Tenant is responsible for cost of cleaning and extermination.

As part of the Landlord's proactive termite control problem, the Landlord reserves the right to inspect any unit at any time for housekeeping and cleanliness. If the Tenant does not maintain its unit and appliances in a clean condition in accordance with the guidelines of the Landlord's housekeeping program, then this may be cause for eviction.

Tenants are not permitted to store clothes on the floor, place mattresses directly on the carpet, or sleep directly on the carpet.

Tenant shall maintain the Apartment in a good state, safe and clean, and will not store or bring hazardous or flammable materials into the Building or the Apartment. Tenant will not perform any hazardous act that might cause fire or increase insurance premiums on the premises. Garbage shall be sealed and removed from the Apartment daily and placed in the dumpsters provided by landlord. Tenant is responsible for the Cleanliness and housekeeping of their Apartment, balcony and fire escapes. If because of Tenants poor housekeeping a terminate problem evolves than Tenant will become responsible for additional exterminating costs.

Tenant will be fined $50.00 for each bag of trash and $100.00 for each piece of furniture not placed in the dumpsters.

26.2. **Keys, Locks and Doors** -Tenant must give to Landlord keys to all locks. Doors must be kept locked at all times. Windows must be locked when Tenant is out. All keys must be returned to Landlord at the end of the Term. Landlord shall provide a lock for Tenant's exterior door. Tenant agrees not to change or add additional locks to any doors on the apartment or building complex. Tenant agrees that locks will not be changed without prior written permission by Landlord. Landlord provides no lock-out service.

1.    If Tenant, their employees, guests or invitees are found disabling, modifying, vandalizing or otherwise disabling or leaving open any door or gate on the premises, landlord may:

a.    Make repairs at Tenants expense of which said cost shall be considered added rent or

b.    Take further action to evict tenant for unreasonable conduct in accordance with Section 42.

2.    Duplication of keys or key cards is prohibited. Anyone found in possession of a key and/or key card that was not distributed by Landlord will have the key and/or key card immediately confiscated and access denied, pursuant to Section II.

3.    If you place a security lock on your apartment door, you MUST provide the office with a key. Failure to do so will result in Lessee's liability for any and all damages resulting from our inability to enter the apartment, or for any and all damages resulting from our attempts to enter the apartment. Maintenance will not be scheduled or performed for Tenant refusing to provide us keys.

Page | 8

Date: _____    Initials: _____

4.    Failure to return all keys to the Landlord by noon of the last day of this Lease will result in forfeit of the entire security deposit.

5.    **The Landlord provides no lock-out service**.  If a Site Manage or Maintenance person desires to provide a lock-out service at the sole discretion of the employee, then it is done with the following understanding.
   a.  The Landlord has no responsibility or liability.
   b.  Between 8:00 a.m. and 9:00 p.m., there is a fee of $25.00 paid in cash.  Between 9:00 p.m. and 8:00 a.m., there is a fee of $50.00 paid in cash.

Once again, we do not provide any lock out service.  If Tenant does not wish to pay employees, then they are to get a Locksmith, at the Tenant's sole cost and expense.

26.3.    **Waterbeds** -No waterbeds or water filled furniture are allowed in the Apartment.

26.3.1 **Carpet and Flooring** - The Tenant is responsible for having its carpet cleaned once per year or as directed to do so by Landlord.  Upon this being completed, the Tenant shall provide to Landlord a copy of the receipt.

It is the responsibility of a Tenant who has carpeting in its apartment to have a vacuum.  During the Housekeeping inspection, the Landlord reserves the right to check the condition of the carpet to see that it is vacuumed.  If there is no vacuum on the premises, this may be subsequent cause for further action under the terms and conditions of this lease.

26.4.    **Dogs, cats, birds or other animals or pets** are not allowed in the Apartment or Building without prior written consent. Feeding animals from the Apartment, sidewalks, steps, terrace, balcony or public areas is not allowed. Feeding of stray or wild animals is strictly prohibited.

Tenants are responsible for the conduct and damage caused by their animals.  Tenants may be evicted for having animals without consent.

26.5.    **Laundry** machines are used at Tenant's risk and cost. Instructions must be followed. Tenant agrees not to hang or place laundry on the exterior of any building or lawn. Tenant also agrees not to hang laundry in the laundry areas. Hanging of clothes, towels, or any other items outdoors or out of windows is strictly prohibited. Tenant agrees, under any circumstances not to use any laundry or drying machines in the Apartment. Installation or use of same shall constitute a breach of lease. Tenant may, at his/her option, use laundry and vending facilities provided by the Landlord, but it is understood that such use is at Lessee's sole risk and expense and Tenant will assume no responsibility for items lost or damaged as a result of such use.

26.6.    **Moving** - furniture, fixtures or equipment to and from the leased premises is only permitted between the hours of 8:00a.m. And 7:00p.m. Tenant authorizes Landlord to keep moving companies or trucks off the premises if Tenant's rent is not paid in accordance with the terms of this Lease. Any packing cases, barrels, or boxes, which are used in moving, must be removed by Tenant or by the moving company.

26.7.    **Complex Employees** - Tenant must not send Landlord's employees on personal errands. Landlord is not responsibility for any property left with employees. Any threat or harassment of an employee or subcontractor are grounds for eviction.

The Complex employees are to be treated with the utmost respect and dignity, and shall not be subject to any threatened or actual verbal or physical abuse from any Tenant, guest, invitee, or any other person or occupant of a unit.  Any violation of this shall be met with the strictest of consequences including criminal action, civil action and expulsion in accordance with Section 42.

26.8.    **Vehicles and Parking** – The Tenant only at his sole risk and without any liability on the part of Landlord may use a parking space, if available. It is agreed that if no parking spaces are designated, then the Landlord reserves the right to assign and limit parking. Landlord provides parking on a Tenant only first come first serve basis. No parking is reserved. Tenant is not permitted to park in driveways, sidewalk or restricted areas.

Page | 9

Date: _____    Initials: _____

Improperly parked vehicles may be removed without notice at owner's expense. Tenant is not permitted to park in driveways or restricted areas.

No commercial vehicles, trailers, mobile homes, boats, campers or any object or vehicle with a hitch or any vehicle larger than a pickup is permitted in the parking lot. Violation of any of these rules may result in vehicle being towed without notice at owners expense and risk.

Tenant agrees not to have any vehicle in the parking area that is not in working condition, lacking current inspection, registration or is unlicensed.

Landlord reserves the right to change parking rules, discontinue use of parking lot or charge for parking at Landlords sole discretion.

Landlord is not responsible for theft of personal property, theft of vehicle or damage to any vehicle in parking lot. Tenant assumes full risk for use of parking lot.

No washing, changing of fluids or servicing of vehicles is permitted.

The use or storage of Tenant's or any other person's vehicle, whether or not parked or being driven in or about the parking area or garages, if any, shall at all times be at the sole risk of Tenant or owner.

Should any employee or Landlord assist Tenant with parking, moving or handling Tenant's or any other person's vehicle or other property, that employee is considered the agent of Tenant or such other person and not of Landlord. None of them shall be liable to Tenant or to any other person for the act of omission of any employee, or for the loss of or damage to the vehicles of any of its contents, or other property.

No parking is permitted in front of the dumpster areas or in such a way as to obstruct trash removal or to block another vehicle.

Tenant shall operate all vehicles in accordance with all Governmental regulations.

No guest, invitee or employee of Tenant may use parking areas.

26.9.  **Debris** -Tenant will not throw anything from the Apartment, or hang or shake anything from sidewalks, steps, windows, terraces or balconies.

26.10. **Christmas Trees** - Tenant may not have live Christmas trees. If the Tenant should us a live Christmas tree, it is the Tenant's responsibility to see that the live tree is sprayed with a fire retardant spray. Any damage or additional cleaning necessary as a result of the use of a live tree will be assessed against the Tenant and considered added rent.

26.11. **Roof** -No one is permitted on the roof.

26.12. **Common Areas** - Nothing may be used in, kept in, stored, placed on or attached to fire escapes, sills, windows, balcony, stairs or exterior walls of the Apartment or in the hallways, public and common areas. Tenant will not place trash, garbage, or trash containers on patios, stoops, hallways, stairs, laundry areas, terraces, balconies and/or public common areas. Tenant must place trash in sealed containers in designated locations or dumpsters.

26.13. **Energy** -Tenant shall conserve energy. Tenants shall not open widows during heating season. The Tenant will not regulate heat in the Apartment by opening windows. If the Tenant opens windows to regulate heat, the Tenant will be fined Twenty-five ($25.00) dollars each time. This charge is considered added rent.

Do not use oven for heat.

No kerosene heaters are permitted.

26.14. **Plumbing and Equipment** - Plumbing fixtures and all other property and equipment must be used only for their intended purpose.

Date: _____  Initials: _____

26.15. **Instruments** -Tenant agrees not to install piano, organ, or percussion instruments of any kind in or upon the Apartment without prior written consent of Landlord.

26.16. **Water**-Using water for any purpose outside the Tenant's apartment is prohibited.

26.17. **Returned Check** - A service charge of Fifty ($50.00) dollars will be made upon the Tenant if a bank refuses payment of a check or money order from the Tenant for any amount due under the Lease. This charge is considered added rent.

26.18. **Return Payment Fee** - Any returned check or money order which makes any payment for an amount due under this Lease late will cause late fees to be charged in addition to the returned check or money order fee of $50.00. This charge will also be considered added rent.

26.19. **Antenna/Dish** -The Tenant will not erect an antenna or dish of any type on the exterior of the Building or chimney.  Any such antenna will be removed at the Tenant's expense.  This expense is considered added rent.

26.20. **Fire Protection** -The Landlord acknowledges that the Tenant has been instructed by the Landlord on procedures needed to test the smoke detectors in the Apartment and in the Building of which the Apartment is located. Landlord acknowledges that Tenant fully understands how to test the smoke detectors.  Tenant promises to test monthly or more frequently, as recommended by the manufacturer, all smoke detectors in the Apartment.  Tenant agrees to notify the Landlord immediately if any smoke detector is found not working for any reason.  Tenant agrees to pay for and keep fresh batteries in each smoke detector in the Apartment when applicable. Tenant agrees not to remove, tamper or disarm any smoke detector or part of fire alarm or life safety systems.  The cost for a false alarm will be $250.00.  The cost of emptying a fire extinguisher in a none-emergency is $100.00.  This shall be considered added rent.

26.21. **Light Bulbs and Fuses** - Landlord will supply Tenant's Apartment with light bulbs, fuses and fluorescent starters when Tenant moves in.  Tenant will furnish replacement light bulbs, fuses and fluorescent starters and agrees to leave these light bulbs, fuses and fluorescent starters when the Tenant vacates the Apartment.

26.22. **No Loitering** -There shall be no loitering in the halls, stair towers, fire escapes, courtyard, rear of the complex, public or common areas, parking lot or any other areas.

26.23. **Playing** -There shall be no ball playing, horseplay, sporting activities, game playing bicycling, roller-skating or the like in the halls, stair towers, fire escape, courtyard, rear of the complex, public or common areas, parking lot or any other areas.

26.24. **Storage** -Tenants is not permitted to place or store belongings of any sort in stair towers, building hall closets, building hallways, laundry rooms, building foyers, heater closets, balconies or fire escapes or any other area outside of Apartment. Any items found in these locations will be disposed of without notice and with no liability on the part of the Landlord.

26.25. **Barbecuing** – Barbecuing or storing of barbecue grill is not permitted any where inside or outside the complex.

26.26. **Drugs** - If Tenant, his employees, guest or invitees are suspected, accused, charged or found guilty of drug use, drug dealing or possession of drugs or drug paraphernalia, Landlord reserves the right to terminate Tenants lease for unreasonable conduct in accordance with Section 42.  This applies to illegal drugs.

26.27. **Guns** - If Tenant, his employees, guest or invitees are suspected, accused or found guilty of illegal gun dealing or in possession of guns without a proper carry or dealers permit. Landlord reserves the right to terminate Tenants lease for unreasonable conduct in accordance with Section 42.

26.28. **Video Surveillance and Security.**  Landlord has no obligation to supply security at the complex. Landlord makes no representation, warranty or guarantee as the security or safety at the complex.  The Landlord has no duty to protect any Tenant, guest, invitee or other persons, whether in an apartment, building complex, or adjacent to any Complex.

Date: _____  Initials: _____

Tenant recognizes that video surveillance systems may be in use at the sole discretion of the Landlord. Landlord reserves the right to turn all surveillance videos to the authorities for their use.

If someone is in your unit without written authorization and are not on the Lease, this will be treated as a break in by the Landlord and referred to the authorities for prosecution.

Tenant acknowledges that Maintenance personnel, Property Managers and subcontractors under the control of Landlord, shall be in their Apartment. It is the responsibility of Tenant to secure all valuables. It is not the responsibility of Landlord for any lost or stolen items, whether in the Apartment or Building Complex.

26.29. **Carpet and Flooring.** The carpets and flooring installed in and about the demised premises are and shall remain the property of the Landlord. Tenant shall maintain the same in as good condition and order as they are at the beginning of this Lease, reasonable wear and tear alone excepted. Tenant shall be responsible for any loss of, or damage to, said carpets or flooring and shall further be responsible for the cleaning thereof. Any damage to flooring by pets or children is the Tenants responsibility.

26.30. **Hardwood Flooring.** The hardwood flooring and vinyl tile installed in and about the demised premises are and shall remain the property of the Landlord. Tenant shall maintain the same in as good condition or order as they are at the beginning of this Lease, reasonable wear and tear alone accepted. Tenant shall be responsible for damp mopping of the hardwood floor on a monthly basis. Tenant shall be responsible for any loss of, or damage to, said hardwood or vinyl tile and shall further be responsible for cleaning thereof. Any damage to flooring by pets and children is the Tenant's responsibility.

26.31. **Social Gathering and Parties** –

**Guests** – Tenants are solely responsible for their guests, visitors and invitees behavior, disturbance or vandalism.

**Alcohol Use** – Tenants, their guests, visitors and invitees are not permitted to drink alcoholic beverages in the common areas, courtyard, halls, stair towers, fire escapes parking areas or any other place at the complex except inside their Apartment.

**Noise Levels and Conduct** – As judged in the Landlords sole discretion, hosting a loud, boisterous party that interferes with the rights of quiet enjoyment of other tenants is a violation of this lease and can lead to the Tenants eviction. If the police are called in response to any party this is automatic ground for eviction.

26.32. **Candles and Incense** – The burning of candles or incense is strictly forbidden as it may result in fire.

26.33. **Emergency** – If you ever need emergency service call 911 immediately. The landlord is not responsible for emergency response or service.

26.34. **Incident Report** - If anything happens at the complex for which the Tenant needs to claim, the Tenant is required to submit an incident report on the attached form within 24 Hours of the incident.

26.35. **Service Request** - All non-emergency service requests must be made in writing on the attached form. The complex employees may not perform non-emergency work without this paper work.

26.36. **Smoking** -   It is not the Landlord's intent restrict anyone from smoking within their apartment, however, Tenant recognizes that if Tenant is a smoker or allows their guests or invitees to smoke in the apartment, then the Tenant will automatically be billed the cost to repaint the apartment and shampoo the carpet. This is in accordance with Section 39, Subsections 8a and c.

26.37. **Mail and Packages** - The Landlord has no responsibility to receive or distribute Tenant's mail, packages, express deliveries or hand deliveries. The Landlord makes no representation as to the condition of mailboxes and/or the facilities ability to receive packages.

27.     **Representations, changes in Lease.** Tenant has read this Lease. All promises made by the Landlord are in this Lease. There are no others. This Lease may be changed only by an agreement in

Date: _____   Initials: _____

writing signed by and delivered to each party. Any bill, statement, approval, consent, permission or notice must be in writing.

28. **Landlord unable to perform.** Landlord may be delayed or unable to: (a) carry out Landlord's promises or agreement; (b) provide any service or utility required to be provided; (c) make any required repair or change to the Apartment or Building, or (d) supply any equipment or appliances required to be supplied. Tenant's obligations are not affected if that results from settling insurance claims, obtaining estimates, weather, labor or supply problems, public authorities, Tenant's act or neglect, emergency or any other cause not fully within Landlord's reasonable control.

29. **Intentionally left blank.**

30. **Transfer of Tenant.** If at any time, Tenant has to transfer from one Apartment to another as a result of no failure or default on behalf of Landlord, then Tenant shall be subject to those costs as outlined in Section 39, Subparagraph 8, Sections 40 & 41.

31. **Quiet enjoyment.** Subject to the terms of this Lease, as long as Tenant is not in default, Tenant may peaceably and quietly have and enjoy the Apartment for the Term.

32. **Landlord's consent.** If Tenant requires Landlord's consent to any act and such consent is not given, Tenant's only right is to ask the Court for a declaratory judgment to force Landlord to give consent. Tenant agrees not to make any claim against Landlord for money (or subtract any sum from the rent) because such consent was not given.

33. **Limit of recovery against Landlord.** Tenant is limited to Landlord's interest in the Building for payment of a judgment.

34. **Parties bound by Lease.** This Lease is binding on the Landlord and the Tenant and all parties who lawfully succeed to their rights or take their places.

35. **Landlord.** Landlord means the owner of the Apartment, or the lessee of the Building, or a lender in possession. Landlord's obligations end when Landlord's interest in the Apartment is transferred. Landlord's agents or employees may perform any acts Landlord may do.

36. **Paragraph headings.** The paragraph headings are for convenience only. They should not be used to interpret the Lease.

37. **Furnishings.** If the Apartment is furnished, the furniture and other items are accepted as is. If an inventory is supplied, each party shall sign a copy. At the end of the Term, Tenant shall return them clean and in good order and repair. Tenant is not responsible for ordinary wear and tear.

38. **Broker.** Tenant states that no broker assisted with leasing the Apartment except the Broker named in the heading of this Lease. Tenant will pay Landlord any money Landlord may spend if this statement is incorrect.

39. **Deduction from security deposit.** The Tenant authorizes the Landlord to deduct from the Tenant's security deposit the following charges when applicable, but not limited to:

    1. Any rental payment or portion of a rental payment or added rent required under this Lease, which is not paid;

    2. Any late charge or check or money order return fee as discussed in this Lease;

    3. Reasonable attorney fees caused by enforcement of the terms and provisions of this Lease;

    4. Court costs and reasonable legal fees caused by enforcement of the terms and provisions of this Lease;

    5. The costs of any repairs, replacements, redecorating and/or refurnishing of the premises or any fixtures, systems or appliances not caused by reasonable wear and tear;

Page | 13

Date: _____ Initials: _____

6.  Any costs and expenses incurred by the Landlord, which arise from the Tenant's failure to perform any obligation under this Lease;

7.  Those charges identified herein, but not limited too;

8.  If the Tenant moves out before one (1) full year of occupancy, or is evicted before one full year of occupancy, the following charges shall be deducted from any security deposits or included as part of your default amount.
    a)  Repaint Apartment          $800.00
    b)  Clean Apartment            $400.00
    c)  Shampoo Carpet             $400.00

    If the Tenant occupies the Apartment for a period longer than three years, the Landlord may pay the cost of repainting when the tenant vacates.

9.  Upon Tenant's vacating the Apartment, the Landlord shall inspect the Apartment and deductions shall be made from the Tenant's security deposit, in accordance with the price list noted in section9. Tenant agrees to pay damages in excess of deposit amount within ten (10) days of written notification.

40.  **Release of security deposits.**  The Landlord will release the Tenant's security deposit subject to the following provisions:

1.  At the end of the Term, Tenant must leave the Apartment clean and in good condition, subject to ordinary wear and tear.  Tenant will remove all of Tenant's property, installations, alterations and decoration.  Tenant will repair all damages to the Apartment and Building caused by moving.  Tenant will restore the Apartment to the same as or better condition than at the beginning of the Term.

2.  At the expiration of the lease the Tenant must give sixty (60) days written notice prior to vacating the Apartment.  The sixty (60) day written notice must be given from the first (1st) day of the month prior to vacating.   For example, if the Tenant plans on vacating the Apartment in the middle of the month of May, the Tenant must still give notice sixty (60) days prior to May 1st.

3.  The entire Apartment, including but no limited to the range, refrigerator, carpets, bathrooms, closets, cupboards, windows, blinds, flooring etc. must be cleaned.

4.  The refrigerator must be defrosted.

5.  There must be no outstanding late charges, check return fees, delinquent rents, added rents or other charges.

6.  All debris, rubbish, trash and discard must be place in the dumpster containers provided.

7.  There must be no damage to the property beyond normal wear and tear.

8.  All keys and key cards must be returned to the Landlord.

9.  A written forwarding address must be left with the management office.

10.  If Tenant fails to give sixty (60) days written notice, Tenant shall forfeit the security deposit.

11.  All utility bills are paid.

12.  All added rent is paid

13.  Compliance with all terms of Lease.

41.  **Early Termination of Lease.**  A. Tenant or the Landlord may terminate this Agreement at the end of the Term by giving the other party at least sixty (60) days prior written notice.  If no such notice is given,

Date: _____  Initials: _____

the Term of this Agreement will be extended for a one (1) year term. If the Term of this Agreement is extended for one (1) year, the rent increase will be determined by management from year to year until the Agreement is terminated by either the Landlord or the Tenant upon sixty (60) days written notice at the end of the Lease Term.

If the Tenant's present employer transfers the Tenant's place of employment outside of the sixty (60) mile radius of the Premises, the Tenant may terminate this Agreement. If the Tenant's employment is transferred outside of the sixty (60) mile radius of the Premises, the Agreement may be terminated by Tenant giving sixty (60) days written notice and paying an additional sum equal to one (1) month's rent under the Lease. Written notice of such transfer from the Tenant's employer is required.

If the Tenant is inducted, recalled, transferred or discharged from military service, the Tenant may, upon giving sixty (60) days written notice and paying an additional sum equal to one (1) month's rent, terminate this Agreement. A copy of a Tenant's military orders is required.

Under all circumstances, herewith, the cost denoted in Section 39 shall apply.

42.    **Unreasonable Conduct and Behavior Eviction.** If at any time the Landlord in his sole discretion determines that the Tenant's conduct or the conduct of other occupants of the leased premises visitors, employees, guests or invitees is unreasonable or interferes with the quiet enjoyment of other tenants or violates any of the rules and regulations then the Landlord or governmental authority may ask the conduct be discontinued. If the conduct continues, after the Tenant, other occupants or visitors, employees, guests or invitees have been asked to discontinue such conduct, the Landlord has the right to terminate this Lease by giving the Tenant personally or by leaving at the leased premises, a five (5) days written notice to vacate the premises. The term of this Lease shall terminate upon the expiration of the five (5) days and the Landlord will be entitled to the immediate possession of the premises upon the same terms and conditions as denoted herein 44 shall apply. Landlord may also evict the Tenant for any other cause that the law allows.

Tenant may also be evicted if Police or other law enforcement agency of governmental authority is summoned to apartment or building complex as a result of Tenant, guest or invitees conduct or at the request of said agency.

43.    **Eighteen Percent Interest on all Amounts Due.** If the Landlord fails to receive the Tenant's monthly rent installment, added rent, or money due under the terms of this Lease, including but not limited to attorney's fees, costs, etc., the Tenant in addition to the rent, added rent, or other payments due, shall pay ten percent (18%) interest on all amounts due from the date the payments are due.

44.    **Attorney Fees and Costs.** The Tenant will be responsible for any court costs and/or attorney's fees incurred for the collection of any delinquent rent, added rent, or any other payment due under the terms of this Lease or resulting from the enforcement of any other provisions of this Lease. In addition, Tenant will be responsible for any administrative fees or expenses, which shall be a minimum of $250.00 once any judicial action is taken.

45.    **Holding Over.** In the event tenancy under this Lease is terminated for any reason, and the Tenant remains in possession of the Apartment, the Tenant shall be considered a "hold-over tenant" and the Landlord shall have the right to remove the Tenant and the Tenant's possessions from the premises. Also, the Landlord shall have the right to change the locks and take such other steps as the Landlord finds appropriate to regain possession of the premises.

In the event of holdover past the lease expiration date, Lessee will be liable for rental payments of double the monthly rent amount specified within the lease until such time as apartment is vacated.

46.    **Tenant's Knowledge and Understanding of Lease Contents.** The Tenant was interviewed and had explained to him/her the management policy, admission and occupancy policies, regulations and standards of conduct, the Lease, and vacating procedures and he/she fully understands them.

47.    **Notice of Tenancy Registration.** Your new tenancy may be registered with The Registry, Inc., and a consumer-reporting agency for real property new transactions. At the end of your tenancy, the closing status will also be reported. A faithful performance of your rental agreement/lease, and a satisfactory termination of your tenancy will reflect favorably on your real property consumer life.

Date: _____    Initials: _____

Misconduct and/or a serious breach of your performance of your rental agreement (nonpayment or late payment of rent or added rent) and/or abnormal termination of your tenancy will reflect badly on your real property consumer file and may seriously hamper your ability to obtain desired housing in the future and/or hamper your ability to obtain any credit and/or loans.  Credit ratings may be filed monthly with The Registry.  All late payments are reported.  Any unsatisfactory lease termination will be reported immediately.

48.    **Signatures, effect date.**  Landlord and Tenant have signed this Lease as of the above date.  It is effective when Landlord delivers to Tenant a copy signed by all parties.  With more than one Tenant signing this Lease, their liability will be joint and several.   This means that each is fully responsible for performing all obligations, and for all payments.

49.    **Appliances,** The Apartment has been provided to Tenant with the following Appliances:

|                       | Tenant Initials |
|-----------------------|-----------------|
| One Refrigerator      | _____     |
| One Stove and oven    | _____     |
| One Air conditioner   | _____     |

Stove and oven:  It is the responsibility of the Tenant to keep the stove and oven clean.  These items will be reviewed during the housekeeping inspection for cleanliness.  The Landlord will not service any stove or oven that is dirty, greasy, or filthy.  Stove and oven should be cleaned monthly.

Refrigerator:  If you are at a Complex in which a refrigerator has been provided, you are required to defrost the refrigerator each month.  If damage to the freezer is caused as a result of failure to defrost or as a result of the way in which you defrost, you shall be billed the full cost of $400.00 for the refrigerator.

50.    **"AS IS".**  The Landlord is renting this apartment to the Tenant **"as is"**.  The Landlord is not responsible for allergies, mold, breathing disorders, changing of air filters, or housekeeping of Tenant.

Tenant has inspected the Apartment and Building.  Tenant states they are in good order and repair and takes the Apartment "as is".

51.    **Documents.**  Any and all documents provided to Landlord or obtained by Landlord from third parties, shall remain the sole and exclusive property of Landlord.

52.    **Community Groups/ Civic Groups.**   The Landlord has no obligation to recognize any Tenant groups, civic groups, civic associations, or other mercantile or Tenant organizations.  Any recognition by the Landlord is done as a courtesy only.  The Landlord reserves the right to recognize some groups and not others.

53.    **Inspection.**  Should a Tenant require an inspection of the unit by a governmental agency for compliance, it is the responsibility of the Tenant to be present and allow access to the unit for the Inspector.  Any failure on behalf of the Tenant to admit an Inspection or to delay the repairs of the work as outlined in an Inspection Report will cause the Tenant to be fully obligated and liable for all rents and added rents under the Lease, should the governmental agency suspend assistance, voucher, payment or other financial aid.

Date: _____  Initials: _____

# ◢ SBG Management Services PA, Inc.

P.O. Box 549 Abington, PA 19001
Phone 215.938.6665

June 3, 2025

Courtney Hathaway
601 W. Cliveden Street, Apt. A306          Email: chathaway1030@gmail.com
Philadelphia, PA 19119

RE:    **126 W. Allens Lane, Apt. A6, Phila., PA 19119**
          **Request for refund**

Dear Ms. Hathaway:

    We are in receipt of your letter dated May 23, 2025 received on June 2, 2025 regarding the above captioned matter.

    Be advised Allen's Lane was placed under Court Ordered Receivership in the United States District Court for the Eastern District of Pennsylvanian under Case No.; 24-04722 on March 17, 2025 (copy enclosed.) This Court Order precludes us from taking any action, or making any payments on behalf of Allen's Lane.

    You vacated the property on March 28, 2025 after the Court Order was issued. Therefore, any refund must be processed through CPM Property Management, 126 W. Allens Lane, Unit A3, Philadelphia, PA 19119. We have no information concerning your tenancy.

Very truly yours,

SBG Management Services PA, Inc.
Encl..


Equal Housing Opportunity
Equal Opportunity Employer


Wheelchair
Accessible

"SBG Management and the owner of the property in question does not discriminate on the basis of handicap status in the admission to, or treatment of employment in its federally assisted programs and activities."

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **FANNIE MAE,** | CIVIL ACTION |
| Plaintiff, | Case No.: 24-04722 |
| v. | Related to Doc. No. 7 |
| **HARRISON COURT REALTY CO., L.P.,** **SIMON GARDEN REALTY CO L.P.,** **FERN ROCK REALTY CO., L.P.,** **STONEHURST REALTY CO., L.P.,** **MARCHWOOD REALTY CO., L.P.,** **ALLEN'S LANE REALTY CO., L.P.,** **OAK LANE COURT REALTY CO., L.P.,** **GREENE TREE REALTY CO., L.P.,** **DARRAH SCHOOL REALTY CO., L.P.,** **and MARSHALL SQUARE REALTY CO.,** **L.P.** | |
| Defendants. | |

## FIRST AMENDED ORDER APPOINTING A RECEIVER

AND NOW, this 17th day of March _____, 2025, upon consideration

of *Plaintiff's Motion to Amend the Receivership Order* (the "Motion") filed by Fannie Mae

("Plaintiff"), and this Court having considered the *Order* entered September 11, 2024 [Doc.

No. 18] (the "Prior Order"),[1] it is hereby ORDERED as follows:

      1.    The Motion is hereby GRANTED as set forth herein.[2]

      2.    Trigild IVL is appointed receiver (the "Receiver") over all property in or

upon which Plaintiff has a mortgage, lien, security interest, or assignment, including the

Mortgaged Property owned by (i) Harrison Court Realty Co., L.P. ("Borrower-Defendant Harrison

Court") located at 385 Harrison Avenue Upper Darby, PA 19082; (ii) Simon Garden Realty Co

---

[1] For the avoidance of doubt, this Order replaces and supersedes the Prior Order in its entirety.
[2] Capitalized terms used but not defined in this Order have the meanings given in Plaintiff's *Amended Complaint in Mortgage Foreclosure.*

L.P. ("Borrower-Defendant Simon Garden") located at 6731 Musgrave Street Philadelphia, PA 19119; (iii) Fern Rock Realty Co., L.P. ("Borrower-Defendant Fern Rock") located at 900 W Godfrey Ave, Philadelphia, Pennsylvania, 19141; (iv) Stonehurst Realty Co., L.P. ("Borrower-Defendant Stonehurst") located at 2 Copley Road, Upper Darby, Pennsylvania 19082; (v) Marchwood Realty Co., L.P. ("Borrower-Defendant Marchwood") located at 5515 Wissahickon Avenue, Philadelphia, PA 19144; (vi) Allen's Lane Realty Co., L.P. ("Borrower-Defendant Allen's Lane") located at 126 W. Allens Lane, Philadelphia, Pennsylvania 19119; (vii) Oak Lane Court Realty Co., L.P. ("Borrower-Defendant Oak Lane") located at 1623-1635 W. Chelten Avenue, Philadelphia, Pennsylvania 19126; (viii) Greene Tree Realty Co., L.P. ("Borrower-Defendant Greene Tree") located at 330 W. Johnson Street, Philadelphia, Pennsylvania 19144; (ix) Darrah School Realty Co., L.P. located at 718-726 North 17th Street, Philadelphia, PA 19130; and (x) Marshall Square Realty Co., L.P. located at 844 North 6th Street, Philadelphia, PA 19123 (together, the "Borrower-Defendants"), and all of the rents, incomes, revenues, and profits from the Mortgaged Property. The Receiver shall have all of the usual powers and duties of receivers in such cases including, without limitation, the power to apply all monies collected by the Receiver to the necessary preservation of the Mortgaged Property, or as this Court otherwise may direct. The Receiver is appointed solely for the benefit and protection of the rights and interests of Plaintiff, and all actions of the Receiver pursuant to this Order shall be for the benefit and protection of Plaintiff. Notwithstanding any of the provisions of this Order, nothing contained herein shall in any way limit, alter, or impair the rights and interests of Plaintiff in any part of the Mortgaged Property, including the income, revenues, and profits therefrom.

3.    **Receiver's Bond.** The Receiver shall post a bond or cash in the amount of One Thousand Dollars and Zero Cents ($1,000.00) within fifteen (15) days of the entry of this

Order (the "Bond"). Any Bond shall be provided by a corporate surety, guarantying performance by the Receiver of the duties and obligations of its office of receivership, with the Bond providing coverage to Plaintiff and Defendant for loss due to the acts of the Receiver and its agents, servants, or employees. The Receiver shall be liable only for acts or omissions which constitute gross negligence or willful misconduct. The Receiver shall have no personal responsibility for any obligations of Defendant.

4.    **Receivership Estate.** Upon entry of this Order and subject to the rights and interests of Plaintiff, the Receiver is hereby directed and empowered to take from Defendant, its agents, employees, representatives, and all of their affiliates and subsidiaries who now have or may in the future have any interest in the Mortgaged Property, immediate, complete, and exclusive possession and control of the Mortgaged Property, wherever located, including all payments, rents, incomes, revenues, and profits arising from the Mortgaged Property, all accounts, books, records, keys, equipment, and such other personalty which may be found on or off the Mortgaged Property which relate to the operation of the Mortgaged Property and which are subject to the mortgage, liens, or security interests of Plaintiff, hereinafter referred to as the "Receivership Estate."

5.    **Accounting by Defendant.** Within thirty (30) days from the date hereof, or within such additional time as reasonably may be required, Defendant shall prepare and file with the Court and serve on all parties hereto a bring-down for the most recent certified financial statement submitted to Plaintiff and a detailed accounting of all income, expenses, receivables, and payables relating to the Mortgaged Property from the date of the most recent audited financial statement to the present.

6.    **Operation of the Receivership Estate.** Subject to the rights and interests of Plaintiff, the Receiver is appointed to take charge of and to use, manage, operate, and protect

the Receivership Estate, and is granted all of the rights, duties, powers, authority, and responsibility of a court-appointed receiver, including those reasonably necessary to accomplish the purpose of this receivership.

a. <u>Possession of the Receivership Estate</u>. The Receiver is authorized and directed to enter upon, take possession of, and assume exclusive control of the Receivership Estate, wherever located, including but not limited to: the Mortgaged Property; all inventory, equipment, and improvements at the Mortgaged Property; and, all books, records, and personal property relating to the Receivership Estate. The Receiver also is authorized to demand, receive, collect, take possession of, and preserve all accounts related to the Receivership Estate and to exercise any and all intangible rights. The Receiver shall collect from Defendant or others all sums now due and unpaid or which hereafter shall become due during the pendency of this action arising out of or related to the Mortgaged Property.

b. <u>Exclusion of Defendant</u>. The Receiver is authorized to exclude Defendant, its agents, management companies, employees, representatives, affiliates, and subsidiaries from possessing or operating the Mortgaged Property, except as expressly provided for in this Order or as may be expressly agreed by Plaintiff in writing, and it may change any and all locks on the Mortgaged Property.

c. <u>Exercise Ownership Rights</u>. The Receiver is authorized to exercise all rights as to ownership of the Mortgaged Property subject to the limitations herein set forth. The Receiver shall assume and exercise exclusively the powers and prerogatives of the board of directors, shareholders, and management of Defendant with respect to the Mortgaged Property.

d. <u>Authority to Contract</u>. The Receiver may make, cancel, enforce, or modify contracts, leases, or licenses relating to any part of the Mortgaged Property. The Receiver shall not be bound by any contract between Defendant and any third party that the Receiver does not expressly assume in writing related to the Mortgaged Property. It also may rent, lease, or license from time to time any part of the Mortgaged Property as may be deemed appropriate, and to remove any tenant, lessee, or other person or entity for cause.

e. <u>Collection of Revenues</u>. The Receiver shall demand, collect, and receive any and all rents, sub-rents, lease and sublease payments, fees, debts, or other proceeds, profits, or income of any type or nature and however denominated that arise from the use or operation of the Mortgaged Property or are generated from the Receivership Estate (collectively, the "<u>Revenues</u>"), including any Revenues: (i) received or collected by Defendant on or after entry of this Order, (ii) due currently, (iii) hereafter coming due, or (iv) due prior to the date of this Order, but only to the extent such rents have been withheld by any tenant and not paid to Defendant. The Receiver is authorized to contact employees, tenants, subtenants, lessees, sub-lessees, lessors, account debtors, and/or any other parties to contracts or otherwise

regarding the Receivership Estate and to receive, collect, and preserve from them all Revenues and other sums due the Mortgaged Property or Defendant (as related to the operation of the Mortgaged Property).

      f.    <u>Employment of Agents</u>.  The Receiver may appoint, employ, and retain agents, employees, independent accountants, brokers, property management specialists, auctioneers, legal counsel, and other similar professionals or personnel, any of which may be affiliates of the Receiver, that are necessary to take charge of, repair, operate, maintain, and to the extent necessary, liquidate, the Receivership Estate or to assist the Receiver in the performance of its duties pursuant to this appointment. The Receiver shall have the right to direct and supervise the activities of all professionals and personnel so retained and may pay reasonable value for those services from the revenues or proceeds of the Mortgaged Property, provided that any professional management company or broker retained by the Receiver shall be engaged on terms which are reasonably satisfactory to Plaintiff. The Receiver is further authorized to discharge and terminate any such persons or entities currently in place or retained by it after the date of this Order. This Court reserves the right to determine hereafter the fair and reasonable compensation for all such persons retained by the Receiver, if any.

      g.    <u>Preservation of the Receivership Estate</u>.  The Receiver shall care for, conserve, protect, preserve, improve, and maintain the Receivership Estate, and incur expenses which, in the Receiver's judgment and subject to the payment limitations provided in paragraph 7 below, are necessary or proper to continue, operate, maintain, and preserve the Receivership Estate including, but not limited to, incurring expenses relating to security for the Mortgaged Property; providing pest control; obtaining estimates and reports and making repairs in conformity therewith; providing water, garbage collection, and utilities; and purchasing merchandise, materials, and supplies and services at the ordinary and usual rate and prices for such items out of the funds of the Receivership Estate.

      h.    <u>Payment of Necessary Expenses</u>.  Subject to the payment limitations provided in paragraph 7 below, the Receiver is authorized and instructed to pay from the revenues of the Mortgaged Property the ordinary and necessary expenses of operating, preserving, and maintaining the Mortgaged Property incurred from and after the date of the Receiver's appointment and said other reasonable expenses necessary to maintain the Mortgaged Property, including any property taxes, assessments, payments in lieu of taxes, and/or utility charges. The Receiver shall also have the power and authority, subject to the approval of Plaintiff, to pay expenses incurred or related to the Mortgaged Property which were incurred prior to the appointment of the Receiver.

      i.    <u>Establish Accounts for Receivership Estate</u>.  The Receiver shall deposit all Revenues generated by the Mortgaged Property in a segregated interest-bearing account at a financial institution approved by Plaintiff.

      j.    <u>Budget</u>.  The Receiver shall prepare a monthly operating budget for

the Mortgaged Property which shall be submitted to Plaintiff for its approval in its sole discretion. The initial budget shall be submitted within thirty (30) days of this Order. At Plaintiff's request, the Receiver shall also produce an annual budget. The budget, once approved by Plaintiff, shall be deemed the "Budget" for all purposes herein.

        k.     <u>Limited Borrowing Capacity</u>. The Receiver shall have the right, but not the obligation, to borrow funds from Plaintiff (to the extent Revenues generated by the Mortgaged Property are insufficient) in order to meet the Mortgaged Property's working capital needs, but only in such amounts and to the extent permitted under the Loan Documents and on such terms and conditions agreeable to Plaintiff and with Plaintiff's prior written consent. Repayment of any such loans shall be secured by all of the mortgages, liens, security interests, and assignments upon the Mortgaged Property previously granted, transferred, or otherwise conveyed by Defendant to Plaintiff, and any such loans shall be treated as secured debt of Defendant that is senior to all other secured debt of Defendant. Plaintiff shall have no obligation to make any loans or credit accommodations to the Receiver.

        l.     <u>Actions to Preserve the Estate</u>. The Receiver is authorized to institute, prosecute, defend, compromise, intervene in, and settle such suits, actions, and proceedings as the Receiver deems necessary in its reasonable judgment, relating to the protection, maintenance, operation, enhancement, or preservation of the Receivership Estate, or the performance of its obligations under this Order (including but not limited to, the institution of actions to collect rents, evict tenants, and recover rents or portions of the Mortgaged Property), and to employ counsel as may be necessary for such proceedings, and to pay the reasonable value of services rendered out of funds of the Receivership Estate; and thereafter to report to the Court at reasonable intervals upon such proceedings. The Receiver is also authorized to challenge the validity, enforcement, and amount of any taxes accruing on the Mortgaged Property, including any assessment or claim of taxes due by Defendant or any third-party.

        m.     <u>Insurance Coverage</u>. The Receiver shall obtain or continue such insurance coverage for the Receivership Estate as it deems reasonably necessary, but in no event shall the Receiver maintain insurance in an amount less than that required under the Loan Documents. Upon the expiration of the paid-up portion of any insurance policy, the Receiver shall have the responsibility for keeping the Mortgaged Property insured and may at its option keep in force the existing insurance coverage or obtain new coverage for the Mortgaged Property subject to the requirements herein. The Receiver shall have itself named as an additional insured on all applicable policies for the period that it shall be in possession of the Receivership Estate. The Receiver shall also insure the acts and conduct of the Receiver and those persons who it may employ to carry out the duties upon it. The Receiver shall provide to the Court and Plaintiff proof that it has been insured and bonded for the purposes of performing all acts contemplated in this Order, and that proper insurance has been put on the Mortgaged Property within thirty (30)

business days of the entry of this Order. If consistent with existing law, the Receiver shall not be responsible for claims arising from the lack of procurement or inability to obtain insurance, provided the Receiver exercises reasonable diligence to obtain insurance for the Mortgaged Property. No insurance company may cancel its existing current-paid policy as a result of the appointment of the Receiver, without prior order of this Court.

n.    <u>Maintain Compliance with Applicable Laws</u>. The Receiver shall take all such actions and expend all such sums as may be necessary to obtain, maintain in effect, or transfer all licenses, insurance, zoning approvals, and other approvals necessary or required to maintain or operate Mortgaged Property.

o.    <u>Plan to Maximize Revenues and Sell Mortgaged Property</u>. The Receiver is empowered to explore all available options for increasing the revenues created by the Mortgaged Property, and to explore all available options for the sale of the Mortgaged Property, by any reasonable means that will, within the Receiver's business judgment, maximize the realization from the sale of the Mortgaged Property. Subject to Plaintiff's prior written approval, the Receiver will file a report making recommendations to the Court with regard to the use and/or marketing and disposition of the Mortgaged Property. The Receiver, upon its own initiative or at the direction of Plaintiff, and with or without the assistance of a broker, may market and sell all or any part of the Mortgaged Property either pursuant to the rights granted under the Loan Documents or as otherwise provided at law or equity. With respect to any possible sale of the Mortgaged Property, the Receiver shall not enter into any contract for sale unless the Receiver is requested to do so in writing by Plaintiff and the sale is subject to confirmation by the Court on regular notice to the parties to this case. Notwithstanding the foregoing, nothing contained in this paragraph or this Order shall alter, modify, subordinate, or impair any existing rights, interests, or remedies of Plaintiff, including but not limited to Plaintiff's rights under the Loan Documents.

p.    <u>Make Payments Pursuant to the Loan Documents</u>. The Receiver may pay amounts which are owed to Plaintiff pursuant to the Loan Documents as the Receiver receives Revenues sufficient to make such payments and pursuant to the priority provided in this Order.

q.    <u>Ancillary Powers of the Receiver</u>. The Receiver is hereby authorized and directed to operate and manage the Mortgaged Property in the best interests of Plaintiff and to take all action deemed reasonable and necessary to ensure compliance with all applicable requirements imposed by local, state, or federal law, and regulations promulgated by the Commonwealth of Pennsylvania (or any corresponding federal agency or agencies). The Receiver generally may do, execute, and perform any other act, deed, matter, or thing whatsoever that the Receiver reasonably deems ought to be done, executed, and performed in and about or with respect to the Mortgaged Property or the Revenues, or to implement the terms of this Order.

r.    <u>Access</u>.  The Receiver shall take possession of all keys and/or other means of gaining entry to the Mortgaged Property, and through any security system, in order to perform the Receiver's duties.  The Receiver may engage a locksmith for the purpose of gaining entry or access to the Mortgaged Property, through any security system, and into any offices or locked drawers, cabinets, safe deposit boxes, and the like, in order to obtain any documents or property to which the Receiver is entitled to under this Order.  The Receiver may either have the locks changed or create a key that will access the current lock(s).

7.    **<u>Expenditures</u>.**

a.    <u>Payment Priority</u>.  The Receiver is required to pay only those expenses incurred by it or the Receivership Estate since the time of its appointment.  The Receiver shall apply all Revenues arising from or collected from the Receivership Estate, monthly or more often, to the following expenditures, in such order of priority as the Receiver shall determine:

(1)    FIRST, to the extent funds are not otherwise available from Defendant, to the necessary and reasonable costs of maintaining, managing, operating, and preserving the Receivership Estate as provided in the Budget approved by Plaintiff or the Court, including payments to the Receiver for protection of the Mortgaged Property, and the payment of all licenses, permits, and agreements that the Receiver shall deem necessary and in the best interest of preserving the Mortgaged Property and for the continued operation thereof, including the fees of the Receiver as set forth herein and any broker and/or management company hired by the Receiver, all in accordance with applicable local, state, and federal law and regulations;

(2)    SECOND, to the reasonable out-of-pocket expenses of the Receiver, including all advances made by the Receiver, or to the repayment of any payments or advances made by Plaintiff, reasonably necessary to preserve or conserve the Mortgaged Property;

(3)    THIRD, to the payment of the reasonable fees, expenses, and extraordinary fees and expenses of Plaintiff, including reasonable attorneys' fees and expenses, not otherwise paid or reimbursed to Plaintiff by Defendant, as provided under the Loan Documents;

(4)    FOURTH, to the payment of the indebtedness payable by Defendant and secured by the Mortgage and other Loan Documents; and

(5)    FIFTH, to the funds to be held by the Receiver in federally insured, interest-bearing accounts pending further order of this Court.

s.    <u>Rights and Obligations of Plaintiff</u>.  The payments required in the

Third and Fourth subparts of this paragraph 7 shall be made by the last day of each month commencing the first full month following entry of the this Order; provided, however, nothing in this paragraph shall require the Receiver to pay Plaintiff any amount if the funds the Receiver receives are not sufficient to cover all amounts specified in the First and Second subparts of this paragraph and sufficient funds as Receiver deems reasonable to cover one month of the expenses of the receivership in accordance with Budget or otherwise approved by Plaintiff. Plaintiff shall have no obligation or liability, at law or equity, to any person for petitioning for the appointment of a receiver or in connection with a, or as a consequence of, the Receiver's actions or inactions in this case (including its failure to pay any supplier, vendor, or other creditor of the Mortgaged Property or of the Receivership Estate). In the event revenues or proceeds of the Mortgaged Property are insufficient to pay the liabilities incurred by the Receiver (or any successor receiver, bankruptcy trustee, or otherwise), Plaintiff shall have no liability or other obligation to any such party for amounts which such party believes it is owed on account of the operation of this receivership.

       t.     <u>Payment Limitations</u>. Notwithstanding subparagraphs (a) and (b) above, the Receiver shall make no payment which exceeds $5,000 for any one item (excluding property taxes, emergency repairs, monthly or recurring operating charges, or any expense included in the Budget previously approved by Plaintiff), or which exceeds more than ten (10%) percent of the amount budgeted for any particular line item on the Budget, without the consent of Plaintiff, or further order of this Court after notice to the parties and an opportunity for hearing.

       8.     **Compensation of Receiver.** The Receiver's compensation for services under this Order, not including any fee of any broker, auctioneer, attorney, or accountant retained by the Receiver, shall be: (a) monthly fee of $3,000 per property (based on an hourly rate of

$300.00) and any additional fees subject to Plaintiff's approval; (b) a monthly accounting fee of $750.00 per property; and (c) an in-house counsel hourly rate of $450.00. The Receiver and those employed by the Receiver shall furnish Plaintiff and other parties to this action with copies of their invoices for services rendered and expenses incurred on a monthly basis. The payment of fees and expenses to the Receiver shall be on an interim basis, subject to final approval by this Court, and the Court retains jurisdiction to award a greater or lesser amount as the full, fair, and final value of such services. When the Receiver files its final report and motion for discharge, the Receiver shall file with this Court a fee application for final approval of the fees and expenses paid to the Receiver during the pendency of the receivership. Plaintiff's right to object to any fees and expenses as unreasonable is preserved. To the extent that the funds received by the Receiver pursuant hereto are insufficient to pay the Receiver amounts incurred by the Receiver in accordance herewith, the Receiver shall have a charge against the Mortgaged Property, which charge shall have priority over all claims of any claimants or creditors of Defendant; provided, however, that any right, claim, or charge of the Receiver shall be co-extensive with and *pari pasu* with the rights and claims of Plaintiff for the payment of its fees and expenses, including Plaintiff's attorneys' fees (in accordance with the Loan Documents).

        9.      **Reporting Requirements of the Receiver.** The Receiver shall maintain an accounting and keep accurate records concerning the Receivership Estate from the date of entry of this Order. Among the records to be kept are the actual revenues collected and expenses paid each month, and any other records which may be required by any law, or would be reasonable and prudent to keep under the circumstances. Such records shall be made available, upon reasonable request and notice, to Plaintiff and Defendant, and shall be included in the quarterly reports made to this Court. In addition, the Receiver shall also file the following reports with the Court:

a.    <u>Inventory of Receivership Estate</u>.  The Receiver shall conduct an inspection of the Mortgaged Property and shall perform a complete inventory of the Mortgaged Property coming under its control or possession under this appointment.  Such inspection and inventory shall be conducted jointly and with the cooperation of Defendant and its designated agent or representative (to the extent the same are available).  Within thirty (30) days of this Order, the Receiver (joined by the agent or representative of Defendant, to the extent available), shall file under oath in the Department of Court Record's office a true and complete inventory of all property in its possession pursuant to this Order, and any other property which may subsequently come into its possession. The Receiver shall also conduct periodic accounts thereafter.

b.    <u>Quarterly Report</u>.  Commencing on the twenty-fifth (25th) day of the third full month following entry of this Order, and continuing on the twenty-fifth (25th) day of every third month thereafter during the pendency of the receivership, the Receiver shall file with this Court and serve on Plaintiff, Defendant, and the respective counsel in this case, report(s) concerning the operation and financial performance of the Mortgaged Property for the prior quarter, in such form and with such content as Plaintiff hereafter reasonably requires.  The quarterly reports shall include (a) a listing of significant events occurring during the relevant period as well as any actions taken by the Receiver during that time; (b) a statement of the receipts and expenditures since the last report; (c) the current accounts receivable and accounts payable related to the Mortgaged Property; (d) a statement of all cash held or invested by the Receiver and the manner in which it is secured or invested; (e) an inventory and account of any additional property or effects which it has discovered or which shall have come into its hands since its appointment; and (f) the balance due from or to the Receiver since the rendering of its last account.

10.    **Turnover of Property**.  Defendant and its independent contractors and agents, and all persons in active concert and participation with them, including officers, directors, employees, agents, accountants, attorneys, insurers, utilities, and banks, are ordered to deliver immediately over to the Receiver or its agents, whenever received, all property in the Receivership Estate, including, without limitation, the Mortgaged Property, any and all cash, Revenues, rental payments, and lease payments, keys to any aspect of the Mortgaged Property (including to all outbuildings and machinery located upon the Mortgaged Property or used in the operation and maintenance of the Mortgaged Property), accounts receivable, security deposits, trust accounts, bank accounts, personnel files, operations manuals, financial records, payroll records, certificates

and licenses, contracts, leases, books, insurance certificates, binders or other records relating to the operation, maintenance, and management of the Mortgaged Property, fixtures, inventory, supplies, furniture, and equipment used or associated therewith, and all other things of value relating to the Mortgaged Property, and necessary to permit the Receiver to carry out its duties under this Order without interference or delay. Rents and security deposits received by Defendant or any of its agents prior to the date of this Order shall be deemed held in trust for the benefit of the Receivership Estate, and shall be delivered to the Receiver within the earlier of two business days after the date this Order is entered, or two days of receipt. Any security deposit or other deposits which tenants have paid to Defendant or its agents and which are not paid to the Receiver, and over which the Receiver has no control, shall be obligations of Defendant, and may not be refunded by the Receiver without further order of Court. Any security deposits which the tenants have paid or may pay to the Receiver, if otherwise refundable under the terms of their agreements with the Receiver, shall be refunded by the Receiver in accordance with the terms of the applicable leases or agreements.

11.    **Turnover of Funds.**

a.    <u>Funds Held by Defendant or Its Affiliates</u>.    Except as may be expressly authorized by this Court in this Order or hereafter upon notice and a hearing, Defendant and its respective successors, assigns, agents, or any persons or entities claiming by, through or under them, hereby are required to pay and turn over immediately to the Receiver, and to perform all acts necessary to transfer to the Receiver, all funds on hand in cash and all funds held in deposit accounts of or for the benefit of the Receivership Estate arising from the ownership, possession, or operation of the Mortgaged Property and all accounts, accounts receivable, and any other

collectibles and all keys, books, records, equipment, and all things in any manner related to the ownership, possession, or operation of the Mortgaged Property.

> b.    Funds Held by Third Parties.    Any bank, savings and loan association, broker, escrow agent, title company, and any other financial institution or other entity, wherever located, which is served with a copy of this Order shall, within ten (10) days of service, turnover or transfer to Receiver all property and/or funds properly belonging to the Receivership Estate which are in such entity's possession, custody or control, together with all records relating to such property and/or funds.

> 12.    **Injunction Against Defendant.**    Except as may be expressly authorized by this Court in this Order or hereafter upon notice and a hearing, Defendant and its management, members, partners, shareholders, board of directors, and all of their respective successors, assigns, employees, agents, attorneys, or any persons or entities claiming by, through or under them hereby are enjoined from:

>> a.    Possessing, managing, or controlling any part of the Receivership Estate and from interfering in any way with the possession or management of the Mortgaged Property and other Mortgaged Property by the Receiver, including terminating or causing to be terminated any license, permit, lease, contract, or agreement relating to the Receivership Estate or the operation of the Mortgaged Property including any insurance policy or agreement with any utility;

>> b.    Collecting, withdrawing, transferring, conveying, concealing, or otherwise disposing of any part of the Receivership Estate, including cash Mortgaged Property, and the proceeds derived therefrom, during the appointment of the Receiver, including: collecting any Revenues, rents, issues, proceeds, or profits from the Receivership Estate; withdrawing funds from any bank or other depository account relating to the Receivership Estate; causing the cancellation or termination of any policy of insurance; directing the remittance of any premium refund or any funds generated or payable on account of such termination of any such policy; or causing any change or cancellation of any agreement with any utility for the provision of electricity, gas, water, telephone or cable services to any part of the Mortgaged Property;

>> c.    Removing any property from the Mortgaged Property and from removing, destroying, concealing, changing, or altering in any manner any of the

books or records relating to the ownership, possession, or operation of the Receivership Estate. Defendant and its agents are expressly charged with the duty of advising all banks, depositories, insurance companies, utilities, and creditors, if requested to do so by the Receiver, of the contents of this Order, and its agreement that the Receiver be given full and sole access to all accounts, contracts, or other rights and entitlements which previously inured to the benefit of Defendant and/or its agents; and

       d.      Filing any petition under the United States Bankruptcy Code.

       e.      Except as provided in this Order or as expressly consented to by Plaintiff in writing, Defendant is prohibited from dealing with the Mortgaged Property in any manner unless and until all Events of Default, as that term is defined in the Loan Documents (past, present and future), are cured.

     13.    **Injunction Against Creditors.**  Any creditor or party holding a claim arising from, related to, or against Defendant or any part of the Receivership Estate, as related to the Mortgaged Property only, is enjoined from prosecuting such claim from the date of entry of this Order, except that Plaintiff may proceed to enforce its rights and remedies, including its sale and foreclosure remedies, under the Loan Documents and applicable law. In the event that either the Receiver or Defendant is served with process or are otherwise notified of any pending lawsuit which could result in a lien or charge against the Receivership Estate if reduced to judgment, or which could adversely affect the possession of the Receiver of any of the Receivership Estate, the Receiver shall notify the plaintiff in such case of this Order, and such plaintiff shall immediately cease the prosecution of such lawsuit and shall serve a claim upon the Receiver. Upon such notice, such claimant shall be enjoined from further proceeding until this Court enters a further Order providing for the disposition of all such claims. Defendant shall cooperate with the Receiver in notifying the Receiver and Plaintiff of any such claim made by legal process upon it by immediately contacting the Receiver and Plaintiff and making the Receiver and Plaintiff aware of the pendency of any such action. The Receiver may petition this Court for any orders necessary (including for contempt) of any violation of this Order by Defendant, or any creditor or other party.

14.    **No Discrimination.**  No person or entity shall discriminate with respect to Defendant or the Receiver on account of the appointment of the Receiver in this proceeding.  No government entity shall deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to Defendant solely because Defendant has been and is insolvent or because the Receiver has been appointed pursuant hereto.

15.    **Limitation on Receiver's Duties.**  The Receiver shall not be obligated to upgrade the Real Property or to make any improvements thereto, unless and until ordered to do so by the Court.  The Receiver shall not be obligated to contribute its personal funds in the performance of its duties hereunder, and the receivership is to be conducted solely from the funds arising from the Receivership Estate.  No obligation incurred by the Receiver shall be its personal obligation.

16.    **Inspection of Receivership Estate.**  The Receiver shall permit Plaintiff and Defendant, upon reasonable request and notice, to fully inspect the Receivership Estate and the books and records kept in connection with the operation of the Mortgaged Property.

17.    **Plaintiff's Discretion.**  Plaintiff may, in its sole discretion and without further Order of this Court, use any of the funds currently in its possession, or which are remitted to it by the Receiver during the course of this receivership, in any manner it determines is necessary, including for the payment of its fees and expenses (including its reasonable attorneys' fees and expenses), operating expenses of the Mortgaged Property, or interest or principal payments on the Loan.

18.    **Reservation of Rights by Plaintiff.**  Following the entry of this Order, Plaintiff shall retain all rights and remedies under the Loan Documents and applicable law, and all such rights and remedies are hereby preserved.  Specifically, and without limiting the preceding

sentence, the Court hereby authorizes Plaintiff to exercise its remedies to sell all or any part of the Receivership Estate as necessary in its sole discretion in accordance with the Loan Documents, including, but not limited to, by way of foreclosure, sale, or lease, as well as any and all other rights and remedies provided for under the Loan Documents, at law, or in equity.

19. **Distribution of Sale Proceeds.** In the event the Mortgaged Property and/or any part of the Receivership Estate is sold by way of sale by the Receiver, unless otherwise ordered by this Court, all proceeds of such sale, after deducting expenses incurred in connection therewith and, subject to the approval of Plaintiff and the Court, sufficient funds as Receiver deems reasonable to cover the remaining expenses of the Receivership Estate, shall be transferred to Plaintiff to be held in escrow, with any liens against the Mortgaged Property and the corresponding part of the Receivership Estate attaching to such proceeds in the same order of priority to which they attached to the Mortgaged Property itself.

20. **No Duty to Defend Defendant.** The appointment of the Receiver extends only to the Mortgaged Property and the Receivership Estate and does not impose upon the Receiver any affirmative duty to act on behalf of or defend Defendant. Notwithstanding any other provision hereof, the Receiver shall be under no obligation to complete or file tax returns on behalf of Defendant or file other regulatory or other governmental reports on behalf of Defendant. Responsibility for such filings remains with Defendant.

21. **Supplemental Direction or Instruction.** The Receiver shall undertake any and all additional duties as this Court may provide by its Orders. Plaintiff or the Receiver (for as long as this Order remains operative) may from time to time request that the Court enter additional orders to supplement, clarify, effectuate, or amend this Order, or to provide further direction to the Receiver.

22.    **Taxpayer Identification Numbers**.  The Receiver may use any federal taxpayer identification numbers of Defendant relating to the Mortgaged Property for any lawful purpose.

23.    **Collection of Mail**.  The Receiver may take any and all steps necessary to receive, collect, and review all mail addressed to Defendant or any of their agents which the Receiver has reasonably determined may contain invoices related to the operation of the Receivership Estate, or Revenues to which the Receiver is entitled as set forth herein, and the Receiver is authorized to instruct the United States Postmaster to reroute, hold, and/or release such mail to the Receiver.  Upon request, mail received by the Receiver in the performance of its duties will be made available promptly to the addressee after review by the Receiver, provided, however, the Receiver shall be further authorized to remove, take possession of, endorse, and negotiate all checks or other instruments payable to Defendant, or any of its agents which represent Revenues of the Mortgaged Property.

24.    **Court Permission for Suit**.  No individual or entity may sue the Receiver without first obtaining the permission of this Court.

25.    **Service of Order**.  Plaintiff shall forthwith provide a copy of this Order, as entered by the Court, to Defendant, and any current property manager for the Mortgaged Property, via facsimile copy or by first-class mail to the addresses set forth on the Certificate of Service to the Motion.  The Receiver shall forthwith provide a copy of this Order via first-class mail, electronic mail, facsimile, or hand delivery to the applicable taxing and utility authorities and any persons in possession of any part of the Receivership Estate, or otherwise affected by this Order. Upon service of this Order upon any person or entity, or any employee or agent of such person or entity, such person shall be deemed to be required to comply with all of the terms of this Order

from the moment of service upon such person, entity, agent, or employee until the Court shall have relieved such person from the terms of this Order by subsequent order. "Service" shall constitute oral or written notice in any form (including by facsimile) to the office of any person to be bound thereby.

26. **Retention of Jurisdiction.**   Except as otherwise provided herein, this receivership action and the preliminary injunction shall continue until further Order of this Court. This Court retains jurisdiction to modify the terms of this Order and to expand or contract the rights, duties, and obligations of the Receiver, and to enter such other orders as may from time to time, during the pendency of this action, be deemed necessary, just, and proper. The provisions of this Order shall survive entry of, and shall govern with respect to any conflict with any subsequent Order of Court, irrespective of whether this case is dismissed, stayed, or transferred.

Dated: ___March 17_____, 2025        BY THE COURT:

_____s/ Catherine Henry_____, J.