## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FANNIE MAE** | : | **CIVIL ACTION** |
| | : | |
| | : | |
| **v.** | : | **NO. 24-4722** |
| | : | |
| **HARRISON COURT REALTY** | : | |
| **CO., L.P.,** *et al.* | : | |
| | : | |

### MEMORANDUM OPINION

Henry, J.                                                              December 30, 2025

      This case is before me on Plaintiff Fannie Mae's Motion for Summary Judgment (ECF No. 56) ("Mot.") in mortgage foreclosure as against Defendants Harrison Court Realty Co., L.P., Simon Garden Realty Co L.P., Fern Rock Realty Co., L.P., Stonehurst Realty Co., L.P., Marchwood Realty Co., L.P., Allen's Lane Realty Co., L.P., Oak Lane Court Realty Co., L.P., Greene Tree Realty Co., L.P., Darrah School Realty Co., L.P., and Marshall Square Realty Co., L.P. (together, the "Borrower-Defendants"). For the reasons that follow, I will grant the Motion.

## I.    BACKGROUND

      The material facts of the case involve the default on mortgages of several entities which are owned by various limited partnerships controlled by and/or affiliated with the Borrower-Defendants and the key principal, Philip Pulley, as detailed below.

### A.  The Loans

      Each of the Loan Agreements originated between December 2020 and October 2022 when Orix Real Estate Capital, LLC, doing business as Lument Capital (the "Original Lender") loaned various sums to the Borrower-Defendants. *See* ECF No. 56-2 ("Plaintiff's Statement of Undisputed Material Facts") ("SOF") at ¶¶ 22, 53, 83, 113, 143, 166, 190, 214, 240. The loan

amounts were as follows:  $7,717,000.00 (the Harrison-Simon loan); $6,741,000.00 (the Fern Rock loan); $6,181,000.00 (the Stonehurst loan); $13,935,000.00 (the Marchwood Loan); $10,087,000.00 (the Allen's Lane loan); $7,278,000.00 (the Oak Lane loan); $8,608,000.00 (the Greene Tree loan); $7,762,000.00 (the Darrah School loan); and $7,068,000.00 (the Marshall Square loan).  *Id.*  Each of the loans are evidenced by Notes and secured by Mortgages granted by the Borrower-Defendants to the Original Lender.  *Id.* at ¶¶ 23-24, 54-55, 84-85, 114-15, 144-45, 167-68, 191-92, 215-16, 241-42.  They were each recorded with either the Philadelphia, Pennsylvania Records Department or the Delaware County Records Department.  *Id.* at ¶¶ 25-26, 56, 86, 116, 146, 169, 193, 217, 243.  The Original Lender subsequently assigned all rights, titles, and interests in the Mortgages and the Loan Documents to Plaintiff.  *Id.* at ¶¶ 29-30, 59-60, 89-90, 119-20, 149-50, 172-73, 196-97, 220-21, 246-47.

Each of the Loan Agreements at issue in this case contain common provisions.  In relevant part, Section 2.02(a)(3) of each of the Loan Agreements provides that the Borrower-Defendants are required to make Monthly Debt Service Payments.  *See* SOF at ¶ 16; ECF No. 31-2[1] ("Harrison-Simon Loan Agreement") at 3[2]; ECF No. 31-12 ("Fern Rock Loan Agreement") at 3; ECF No. 31-20 ("Stonehurst Loan Agreement") at 3; ECF No. 31-28 ("Marchwood Loan Agreement") at 3; ECF No. 31-36 ("Allen's Lane Loan Agreement") at 3; ECF No. 31-44 ("Oak Lane Loan Agreement") at 3; ECF No. 31-52 ("Greene Tree Loan Agreement") at 3; ECF No. 31-60 ("Darrah School Loan Agreement") at 3; and ECF No. 31-68 ("Marshall Square Loan Agreement") at 3 (together, the "Loan Agreements").  If a Borrower-Defendant fails to make payments when

---

[1] Although all of the relevant loan documents are included as Exhibit F to Plaintiff's Motion for Summary Judgment, they are consolidated into a nearly 2,000-page document.  For ease of reference, I cite the loan documents as they appear attached as exhibits to the Amended Complaint, where each loan document is separated into a standalone ECF number.

[2] Citations to specific page numbers refer to the internal pagination of the document, not the PDF pagination.

required by the Notes, including any Monthly Debt Service Payment, such failure is considered an automatic Event of Default pursuant to Section 14.01(a)(1) of the Loan Agreements. *See* SOF at ¶ 16; Harrison-Simon Loan Agreement at 74; Fern Rock Loan Agreement at 75; Stonehurst Loan Agreement at 75; Marchwood Loan Agreement at 75; Allen's Lane Loan Agreement at 74; Oak Lane Loan Agreement at 74; Greene Tree Loan Agreement at 75; Darrah School Loan Agreement at 73; Marshall Square Loan Agreement at 73. Section 2.02(d)(1)(A) of the Loan Agreements provides that if any principal, interest, or other indebtedness due under the Loan Documents remains past due for thirty days or more, then interest on such unpaid amounts shall accrue from the date payment is due at the "Default Rate," which is defined as the lesser of "the sum of the Interest Rate plus four (4) percentage points" or "the maximum interest rate which may be collected from Borrower under applicable law." *See* SOF at ¶¶ 18-19; Harrison-Simon Loan Agreement at 4, Schedule 1; Fern Rock Loan Agreement at 4, Schedule 1; Stonehurst Loan Agreement at 4, Schedule 1; Marchwood Loan Agreement at 4, Schedule 1; Allen's Lane Loan Agreement at 4, Schedule 1; Oak Lane Loan Agreement at 4, Schedule 1; Greene Tree Loan Agreement at 4, Schedule 1; Darrah School Loan Agreement at 4, Schedule 1; Marshall Square Loan Agreement at 4, Schedule 1.

Section 2.02(c) of the Loan Agreements further provides that if the Lender does not receive any amount payable under the Loan Agreements within 10 days of the due date, the Borrower-Defendants must pay a late charge, which is payable in addition to any interest payable on the Default Rate. *See* SOF at ¶ 20; Harrison-Simon Loan Agreement at 3-4; Fern Rock Loan Agreement at 3-4; Stonehurst Loan Agreement at 3-4; Marchwood Loan Agreement at 3-4; Allen's Lane Loan Agreement at 3-4; Oak Lane Loan Agreement at 3-4; Greene Tree Loan Agreement at 3-4; Darrah School Loan Agreement at 3-4; Marshall Square Loan Agreement at 3-4.

Finally, pursuant to Section 14.02 of the Loan Agreements and Section 5 of the Mortgages, Plaintiff has the right to foreclose on the Mortgages and obtain an order directing the sale of the Mortgaged Properties to satisfy indebtedness owed. *See* SOF at ¶ 21; Harrison-Simon Loan Agreement at 76; ECF No. 31-4 ("Harrison Mortgage") at 12; ECF No. 31-5 ("Simon Mortgage") at 12; Fern Rock Loan Agreement at 77; ECF No. 31-14 ("Fern Rock Mortgage") at 11; Stonehurst Loan Agreement at 77; ECF No. 31-22 ("Stonehurst Mortgage") at 11; Marchwood Loan Agreement at 77; ECF No. 31-30 ("Marchwood Mortgage") at 11; Allen's Lane Loan Agreement at 76; ECF No. 31-38 ("Allen's Lane Mortgage") at 11; Oak Lane Loan Agreement at 76; ECF No. 31-46 ("Oak Lane Mortgage") at 12; Greene Tree Loan Agreement at 77; ECF No. 31-54 ("Greene Tree Mortgage") at 11; Darrah School Loan Agreement at 75; ECF No. 31-62 ("Darrah School Mortgage") at 11; Marshall Square Loan Agreement at 75; ECF No. 31-70 ("Marshall Square Mortgage") at 12.

## B. The Defaults

Beginning in February 2024, Borrower-Defendants Fern Rock, Stonehurst, and Marchwood failed to make their scheduled Monthly Debt Service Payments by the payment dates required in their respective loan documents. SOF at ¶¶ 65-70, 95-100, 125-30. Then, beginning in April 2024, Borrower-Defendants Harrison Court and Simon Garden failed to do the same. *Id.* at ¶¶ 35-38. Borrower-Defendants Oak Lane and Greene Tree followed suit in June, and Allen's Lane in July. *Id.* at ¶¶ 155, 178-79, 202-03. After these Borrower-Defendants failed to make the requisite payments, Plaintiff notified them that Events of Default had occurred and that all outstanding principal plus accrued and unpaid interest would be accelerated and immediately due, along with Plaintiff's fees and costs, including attorney's fees. *See* SOF at ¶¶ 44-45, 76-77, 106-107, 136-37, 159-60, 183-84, 207-08; ECF No. 31-77 ("Harrison-Simon Notice of Default"); ECF No. 31-79 ("Fern Rock Notice of Default"); ECF No. 31-81 ("Stonehurst Notice of Default"); ECF

No. 31-83 ("Marchwood Notice of Demand); ECF No. 31-84 ("Allen's Lane Notice of Default);

ECF No. 31-85 ("Oak Lane Notice of Default"); ECF No. 31-86 ("Greene Tree Notice of

Default").

The above-mentioned Borrower-Defendants failed to pay the total amounts due after the

debts were accelerated, and Plaintiff commenced this suit in mortgage foreclosure against them on

September 9, 2024.  *See* SOF at ¶¶ 51, 81, 111, 141, 164, 188, 212.  On January 30, 2025, Plaintiff

amended the Complaint to include Borrower-Defendants Darrah School and Marshall Square, who

failed to make their Monthly Debt Service Payments beginning in September 2024 and were

similarly notified that Events of Default had occurred and that all outstanding principal plus

accrued and unpaid interest had been accelerated and immediately due, along with Plaintiff's fees

and costs, including attorney's fees.  They similarly did not pay the total amounts due after

acceleration.  *Id.* at ¶¶ 226-29, 233-34, 238, 252-55, 259-60, 264; ECF No. 31-87 ("Darrah School

Notice of Default"); ECF No. 31-88 ("Marshall Square Notice of Default").

### C.  Procedural Posture

Two days after filing the Complaint, Plaintiff filed a Motion for the Expedited

Appointment of a Receiver, *see* ECF No. 7, which the Honorable Cynthia M. Rufe, to whom this

case was previously assigned, granted on October 18, 2024, appointing Trigild IVL ("Trigild") as

receiver, *see* ECF No. 18.  The Borrower-Defendants named at the time (i.e., all Borrower-

Defendants except Darrah School and Marshall Square) filed their Answer on October 31, 2024.

*See* ECF No. 22.  The case was reassigned to me on January 9, 2025.  *See* ECF No. 30.  On January

30, 2025, Plaintiff filed an Amended Complaint, naming as additional defendants Darrah School

and Marshall Square, and concurrently filed a Motion to Amend the Receivership Order to include

the additional Borrower-Defendants.  *See* ECF Nos. 31, 32.  The Borrower-Defendants answered

the Amended Complaint on February 27, 2025, *see* ECF No. 42, and I granted the Motion to

Amend the Receivership Order on March 17, 2025, *see* ECF No. 47.

Plaintiff filed the present Motion for Summary Judgment on June 18, 2025, and after oral

argument, the Motion is now ripe for my consideration.

## II.   <u>ANALYSIS</u>

Summary judgment is appropriate if the moving party "shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a).  To succeed in a mortgage foreclosure proceeding, Plaintiff must show "the existence

of an obligation secured by a mortgage, and a default on that obligation." *JPMorgan Chase Bank,*

*N.A. v. Franco*, No. 19-cv-3851, 2023 WL 2025045, at *4 (E.D. Pa. Feb. 15, 2023) (quoting *Chem.*

*Bank v. Dippolito*, 897 F. Supp. 221, 224 (E.D. Pa. 1995)).  "[S]ummary judgment is proper if the

mortgagors admit that the mortgage is in default, that they have failed to pay interest on the

obligation, and that the recorded mortgage is in the specified amount." *Id.* (quoting *Cunningham*

*v. McWilliams*, 714 A.2d 1054, 1057 (Pa. Super Ct. 1998)).

Plaintiff argues in its Motion that summary judgment is proper because there is no dispute

that (1) an obligation secured by each of the Mortgages exists; (2) the Borrower-Defendants

defaulted on such obligations; and (3) the indebtedness under each of the mortgages remains due

and owing. *See* Mot. at 6.  Plaintiff first contends that obligations secured by each of the Mortgages

exist because Original Lender assigned to Plaintiff all right, title, and interest in and to each of the

Mortgages and Loan Documents, each of the Mortgages secure their respective Loans in the

original principal amounts, and Borrower-Defendants do not question the authenticity of any of

the Loan Agreements or Mortgages.  *See* Mot. at 7-8, 11-12, 15-16, 19-20, 23-24, 26-27, 30-31,

34-35, 38-39.  Plaintiff also submits that the Borrower-Defendants defaulted by failing to pay

Monthly Debt Service Payments when due, which is an automatic Event of Default pursuant to

Section 14.01 of each of the Loan Agreements. *Id.* at 9, 13, 17, 20-21, 24-25, 28, 31-32, 35-36, 39-40. Finally, Plaintiff says, each of the Borrower-Defendants have not and cannot pay the entire unpaid balance of the principal, interest, and all other sums under the Loan Documents that became immediately due and payable when Plaintiff accelerated the outstanding principal balance. *See id.* at 10-11, 14-15, 18-19, 21-23, 25-26, 29-30, 32-34, 36-37, 40-42. As of April 30, 2025, Plaintiff says, the total amounts due and owing on the loans are: $8,414,548.61 on the Harrison-Simon Loan;[3] $7,983,345.14 on the Fern Rock Loan;[4] $7,369,822.09 on the Stonehurst Loan;[5] $16,673,567.57 on the Marchwood Loan;[6] $10,411,712.51 on the Allen's Lane Loan;[7] $7,643,820.55 on the Oak Lane Loan;[8] $9,981,403.74 on the Greene Tree Loan;[9] $6,420,194.64

---

[3] This consists of (i) the aggregate unpaid principal amount under the Harrison-Simon Note of $7,367,912.18, (ii) the aggregate accrued, and unpaid interest under the Harrison-Simon Note of $317,361.48, (iii) yield maintenance / prepayment premium in the amount of $73,679.12, (iv) other fees in the amount of $684,337.31, (v) Fannie Mae's attorney costs in an amount of $57,164.50, and (vi) credits in the amount of $85,905.98.

[4] This consists of (i) the aggregate unpaid principal amount under the Fern Rock Note of $6,741,000.00, (ii) the aggregate accrued, and unpaid interest under the Fern Rock Note of $456,840.00, (iii) yield maintenance / prepayment premium in the amount of $208,286.63, (iv) other fees in the amount of $556,293.09, (v) Fannie Mae's attorney costs in an amount of $56,685.68, and (vi) credits in the amount of $35,760.26.

[5] This consists of (i) the aggregate unpaid principal amount under the Stonehurst Note of $6,181,000.00, (ii) the aggregate accrued, and unpaid interest under the Stonehurst Note of $418,888.26, (iii) yield maintenance / prepayment premium in the amount of $190,983.48, (iv) other fees in the amount of $576,473.79, (v) Fannie Mae's attorney costs in an amount of $53,916.50, and (vi) credits in the amount of $51,439.94.

[6] This consists of (i) the aggregate unpaid principal amount under the Marchwood Note of $13,935,000.00, (ii) the aggregate accrued, and unpaid interest under the Marchwood Note of $1,085,466.42, (iii) yield maintenance / prepayment premium in the amount of $1,137,039.94, (iv) other fees in the amount of $1,060,043.29, (v) Fannie Mae's attorney costs in an amount of $56,286.53, and (vi) credits in the amount of $600,268.61.

[7] This consists of (i) the aggregate unpaid principal amount under the Allen's Lane Note of $9,543,325.11, (ii) the aggregate accrued, and unpaid interest under the Allen's Lane Note of $332,029.40, (iii) other fees in the amount of $547,103.71, (iv) Fannie Mae's attorney costs in an amount of $47,208.27, and (vi) credits in the amount of $57,953.98.

[8] This consists of (i) the aggregate unpaid principal amount under the Oak Lane Note of $6,925,088.65, (ii) the aggregate accrued, and unpaid interest under the Oak Lane Note of $255,573.00, (iii) yield maintenance / prepayment premium in the amount of $69,250.89, (iv) other fees in the amount of $439,129.86, (v) Fannie Mae's attorney costs in an amount of $47,209.75, and (vi) credits in the amount of $92,431.60.

[9] This consists of (i) the aggregate unpaid principal amount under the Greene Tree Note of $8,608,000.00, (ii) the aggregate accrued, and unpaid interest under the Greene Tree Note of $438,124.10, (iii) yield maintenance /

on the Darrah School Loan;[10] and $6,894,327.69 on the Marshall Square Loan.[11]  SOF at ¶¶ 40, 72, 102, 132, 157, 181, 205, 231, 257.

Borrower-Defendants do not appear to dispute the existence of the obligations secured by each of the Mortgages, nor do they dispute that events of default have occurred.  *See* ECF No. 73 (Defendants' Opposition to Plaintiff's Motion for Summary Judgment) ("Opp.") at 4.  Rather, Borrower-Defendants "dispute the amount purportedly owed as a result of such obligations."  *Id.* In Borrower-Defendants' eyes, granting Plaintiff the amount requested upon default would give Plaintiff a "windfall," because prior to bringing this action in foreclosure, counsel for Plaintiff and the Borrower-Defendants were engaged in drafting a pre-negotiation letter to allow the Guarantor to the properties, Mr. Pulley, time to sell the properties, which would allegedly satisfy the outstanding mortgage balances in full.  *Id.* at 6.  When Plaintiff abandoned the negotiations and brought this action, Borrower-Defendants contend, it did so with "the expectation that such [purchase] offers would be immediately reduced or withdrawn entirely."[12]  *Id.* at 7.  I find this argument to be inapposite—Plaintiff was under no obligation to continue with drafting the pre-negotiation letter, and it was contractually entitled to bring a foreclosure action upon default.

---

prepayment premium in the amount of $420,661.08, (iv) other fees in the amount of $539,528.37, (v) Fannie Mae's attorney costs in an amount of $47,433.60, and (vi) credits in the amount of $72,343.41.

[10] This consists of (i) the aggregate unpaid principal amount under the Darrah School Note of $7,162,576.22, (ii) the aggregate accrued, and unpaid interest under the Darrah School Note of $147,816.02, (iii) yield maintenance / prepayment premium in the amount of $71,625.76, (iv) other fees in the amount of $291,975.07, (v) Fannie Mae's attorney costs in an amount of $4,163.45, and (vi) credits in the amount of $1,257,961.88.

[11] This consists of (i) the aggregate unpaid principal amount under the Marshall Square Note of $6,531,090.33, (ii) the aggregate accrued, and unpaid interest under the Marshall Square Note of $139,174.20, (iii) yield maintenance / prepayment premium in the amount of $65,310.90, (iv) other fees in the amount of $274,379.06, (v) Fannie Mae's attorney costs in an amount of $4,163.45, and (vi) credits in the amount of $119,790.25.

[12] Borrower-Defendants liken this to the prohibited practice of "dual-tracking" in the residential real estate context and ask the Court to apply the principles underlying its prohibition in finding that there is a dispute of fact as to the amount owed to Plaintiff.  *Id.* at 7-8.  As Plaintiff points out in response, this concept does not apply in the commercial real estate context, so I decline to consider it.

Borrower-Defendants further contend that the amount owed to Plaintiff is in dispute because, according to Mr. Pulley's declaration, Plaintiff and the Receiver have diminished the value of the parcels of land through mismanagement of the properties, and the Receiver charges over five times the competitive market rate for its property management services. *Id.* at 8. They also dispute the proffered calculation of interests and costs, which they believe "include fees and expenses incurred from TriGild and [its property manager's] overpriced management services." *Id.* at 10. Borrower-Defendants thus ask the Court to allow it to engage in discovery to explore the market value of the properties, which it believes is "required to determine the value of any monetary judgment in favor of Plaintiff." *Id.* at 9-10. They also ask the Court to enjoin the foreclosure action and hold summary judgment in abeyance pending Mr. Pulley's attempt to finalize sale of the properties. *Id.* at 10.

In reply, Plaintiff takes the position that any alleged diminution in value of the properties is of no matter because the standard for granting summary judgment is met—Borrower-Defendants do not dispute the validity of the mortgage, that they failed to make the requisite payments, or that they have not cured their default. *See* ECF No. 77 (Plaintiff's Reply In Further Support of its Motion for Summary Judgment) ("Reply") at 2-3. Borrower-Defendants indeed acknowledge in their Opposition brief that "[w]here a mortgagor admits that it is in default of its obligations under the mortgage, or where there is no dispute that the mortgagor has failed to pay its obligations under the mortgage and the recorded mortgage is in a specified amount, then summary judgment is appropriate." *See* Opp. at 5 (quoting *Amerco Real Est. Co. v. Appalachian Self-Storage, LLC*, No. 11-cv-1166, 2012 WL 3597189, at *7 (M.D. Pa. Aug. 20, 2012)). According to Plaintiff, this alone is enough to entitle Plaintiff to summary judgment. Reply at 5. I agree.

Any diminution in value of the properties has nothing to do with whether the properties can be foreclosed upon. The only material facts are those that Borrower-Defendant admit—the

loans exist in a recorded amount, they have defaulted on the loans, and they have not since cured those defaults.  Indeed, the Court may enter summary judgment even if the mortgagor does not admit the amount of indebtedness in their pleadings.  *See Landau v. Western Pennsylvania Nat. Bank*, 282 A.2d 335, 340 (Pa. 1971).  Borrower-Defendants reiterated at oral argument that they believe entry of summary judgment for a sum certain is inappropriate, but in these circumstances, where Borrower-Defendants object to foreclosure based on the value of the properties at issue, which is an "accounting [that] is not due until the property is sold at sheriff's sale," *id.*, it cannot be said that summary judgment is improper.

Because there are no material facts in dispute as to whether foreclosure is proper, I will deny Borrower-Defendants' request for additional discovery to determine the property values.  I also deny Borrower-Defendants' request to enjoin this action pending any sale of the properties, as Plaintiff is contractually entitled to foreclosure.

## III.    <u>CONCLUSION</u>

For the reasons discussed above, I grant Plaintiff's Motion for Summary Judgment.  An appropriate Order follows.